OPINION OF THE COURT
Loren N. Brown, J.
The above-numbered indictment, having been tried before the court without a jury, the defendant having waived the *880 same pursuant to CPL article 320 and the trial having concluded on Thursday, July, 1, 1976, the court renders the following decision and verdict.
For an orderly sequence the court must first decide whether or not the defendant committed the acts alleged in the indictment, which reads as follows: "State of New York, Supreme Court, County of Saratoga, The People of the State of New York, against, William J. Lyttle, III, January, 1976, Term, Indictment No. W7-76. The Grand Jury of the County of Saratoga, by this indictment, accuse the defendant, William J. Lyttle, III, of the crime of Murder in the Second Degree, in violation of Section 125.25 of the Penal Law of the State of New York, committed as follows: The defendant, in the Town of Northumberland, County of Saratoga, State of New York, on or about December 30, 1975, with intent to cause the death of Lynn A. Morris, caused the death of said Lynn A. Morris by inflicting diverse wounds upon the aforesaid Lynn A. Morris by means of a hatchet and a knife. Second Count. And the Grand Jury aforesaid, by this indictment further accuse the defendant, William J. Lyttle, III, of the crime of Murder in the Second Degree, in violation of Section 125.25 of the Penal Law of the State of New York, committed as follows: The defendant, in the Town of Northumberland, County of Sara-toga, State of New York, on or about December 30, 1975, with intent to cause the death of Roberta Lyttle, caused the death of said Roberta Lyttle by inflicting diverse wounds upon the aforesaid Roberta Lyttle by means of a hatchet and a knife. Ronald B. Platt, Grand Jury Foreman. David A. Wait, Sara-toga County District Attorney.”
If the court finds by the proof beyond a reasonable doubt that the defendant committed the alleged acts, the court must then find whether the defendant was criminally responsible for his conduct under section 30.05 of the Penal Law which defines mental disease or defect and establishes in subdivision 2 of section 30.05 that lack of criminal responsibility by reason of mental disease or defect is a defense. If the court finds under these provisions that the defendant was criminally responsible, the court must lastly consider whether the defendant is entitled to the affirmative defense defined by section 125.25 (subd 1, par [a]) and subdivision 2 of section 125.20 of the Penal Law, both of which relate to extreme emotional disturbance.
The court, considering the first issue mentioned above, finds *881 by all the proof beyond a reasonable doubt that the defendant on December 30, 1975 committed the acts alleged in the indictment. This is the most simple aspect of this trial because the proof in regard to the defendant’s commission of the alleged acts is overwhelming.
The next matter to be considered is the defense asserted by the defendant that he is not criminally responsible pursuant to section 30.05 of the Penal Law.
It is the opinion of the court that the psychiatric testimony relative to the mental condition of the defendant at the time of the alleged crimes is uniquely consistent. One psychiatrist, Dr. Xavior Mastrianni, testified on behalf of the People and two psychiatrists, Dr. Richard Cooper and Dr. David Wasser, testified on behalf of the defendant. The court, based on the expert testimony, finds beyond a reasonable doubt as follows:
1. That the defendant had a long history of mental disease which required numerous hospitalizations of varying durations.
2. That the defendant suffered from a psychosis diagnosed as schizophrenic reaction, chronic undifferentiated type.
3. That as a result of the afore-mentioned mental disease or defect, the defendant did not lack substantial capacity to know or appreciate the nature and consequences of his conduct which resulted in the deaths of Lynn Morris and Roberta Lyttle.
4. That as a result of the afore-mentioned mental disease or defect, the defendant did not lack substantial capacity to know or appreciate that his conduct which resulted in the deaths of Lynn Morris and Roberta Lyttle was illegal.
5. That as a result of the afore-mentioned mental disease or defect, the defendant did not lack substantial capacity to know or appreciate that his conduct which resulted in the deaths of Lynn Morris and Roberta Lyttle was considered by society as being morally wrong.
6. That as a result of the afore-mentioned mental disease or defect, the defendant did lack substantial capacity to know or appreciate in his own mind that his conduct which resulted in the deaths of Lynn Morris and Roberta Lyttle was wrong.
As a result of the above determinations, the court concludes beyond a reasonable doubt that the defendant had substantial capacity to know or appreciate the nature and consequence of his conduct which resulted in the deaths of Lynn Morris and *882 Roberta Lyttle; further, that the defendant had substantial capacity to know or appreciate that such conduct was illegal; further, that the defendant had substantial capacity to know or appreciate that such conduct was considered by society as being morally wrong; and, further, that the defendant did lack substantial capacity to know or appreciate in his own mind that such conduct was wrong.
The court has considered the above findings in the light of the determination of People v Wood (12 NY2d 69, 75) and in reaching its final determination herein relies on the following quotations from that case: "cross-examination established beyond peradventure that Wood knew it was against the law to kill a human being.” In the instant case, as indicated herein-before, it is also clearly established beyond a reasonable doubt that the defendant knew it was against the law to kill a human being.
The Court of Appeals (People v Wood, 12 NY2d 69, 76, supra) determined the Trial Judge correctly charged the jury on the meaning of the word "wrong” when he stated: " 'When it speaks of the defendant’s ignorance of his act as wrong, the law does not mean to permit the individual to be his own judge of what is right or wrong. It says that the individual has sufficient knowledge that an act was wrong if its perpetrator knows that his act is against the law and against the . commonly accepted standards of morality and conduct which prevail in the community of mankind. He must know that his act was contrary to the laws of God and man.’ ” The court in the instant case finds beyond a reasonable doubt that the defendant knew, as heretofore indicated, that his acts were against the law and against the commonly accepted standards of morality and conduct which prevail in the community of mankind.
On page 77 the court says: "Moreover, the jury, having been properly instructed, could reasonably have found that defendant was operating under a standard of morality he had set up for himself and which applied only to him. The law does not excuse such moral depravity or 'views of right and wrong at variance with those that find expression in the law’.” In the instant case, this court finds beyond a reasonable doubt that the defendant, although suffering from a mental disease or defect, operated under a standard of morality that he had set up for himself and which only applied to him, and it is the court’s opinion that this operation, even though deluded, *883 cannot be forgiven in view of the fact that the defendant, at the same time, had the substantial capacity to know or appreciate that his acts were illegal and considered by society as being morally wrong.
The court, therefore, concludes by the evidence beyond a reasonable doubt, that the defendant, although suffering from a mental disease, was criminally responsible for his acts which resulted in the death of Lynn Morris and Roberta Lyttle.
The last issue to be considered by the court is whether or not the defendant has established the affirmative defense described in section 125.25 (subd 1, par [a]) and subdivision 2 of section 125.20 of the Penal Law, which sections relate to extreme emotional disturbance and read as follows:
"§ 125.25 Murder in the second degree. A person is guilty of murder in the second degree when: 1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that: (a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime”.
"§ 125.20 Manslaughter in the first degree. A person is guilty of manslaughter in the first degree when: * * * 2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision”.
If the court finds that the defendant has met this burden by a preponderance of the evidence, the court could then find the defendant is entitled to mitigation and is, therefore, guilty of manslaughter in the first degree as defined by subdivision 2 of section 125.20 of the Penal Law.
*884 As to the meaning of an extreme emotional disturbance, it appears to be a classification which is solely the product of the Legislature and without diagnostic classification in the field of psychiatry. (People v Shelton, 88 Misc 2d 136.) An extreme emotional disturbance is a traumatization (People v Patterson, 39 NY2d 288, 303) caused by, inter alia, fear or terror, great distress, injury, or grief. (Model Penal Code [Tentative Draft No. 9, 1959], § 201.3, pp 46, 48.) Unlike the law as it existed under the former Penal Law, the emotional disturbance need not be almost instantaneous with the act of killing. (People v Ferraro, 161 NY 365.) The Court of Appeals in the Patterson case, explaining that the statutory language of the present Penal Law was not as restrictive as the "heat of passion” defense, stated as follows (supra, p 303): "an action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken. Rather it may be that a significant mental trauma has affected a defendant’s mind for a substantial period of time, simmering in the unknowing subconscious and then explicitly coming to the fore.”
This court is convinced that this language described the mental state of the defendant in the instant case. The court finds, that the defendant, even if deluded, had a definite fear for his own life or his own well-being. He believed that he was being threatened with removal from his father and stepmother’s home, and that he was being threatened with institutionalization. The court finds by a preponderance of the evidence that the defendant in his psychotic mental state viewed his family conflict as a life or death struggle. The court finds by a preponderance of the evidence that the perceived threat posed to the defendant’s well-being caused him to act under an extreme emotional disturbance as defined by the pertinent sections of the Penal Law.
This court also finds, objectively, that the defendant was not in mortal or even physical danger from his family; however, it must be emphasized that the reasonableness of the defendant’s emotional disturbance, the existence of the provocation to act, must be "determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be”. (Penal Law, § 125.25, subd 1, par [a].) The defendant’s viewpoint was that of a schizophrenic, chronic, undifferentiated type; and although the court has found beyond a reasonable doubt that the defendant was criminally responsible under section 30.05 of the Penal Law, *885 the court also finds that the defendant, in his psychotic state, perceived danger and hostility and acted accordingly.
The court finds by a preponderance of the evidence, that the defendant is entitled to the mitigating defense of "extreme emotional disturbance” as established in the applicable sections of the Penal Law.
It is, therefore, the verdict of the court that the defendant is guilty of manslaughter in the first degree under each count of the indictment.