*672 OPINION OF THE COURT
Jasen, J.
The significant issue on this appeal is whether the defendant, in a murder prosecution, established the affirmative defense of "extreme emotional disturbance” which would have reduced the crime to manslaughter in the first degree.
On February 28, 1977, Victoria Lo Consolo was brutally murdered. Defendant Victor Casassa and Miss Lo Consolo had been acquainted for some time prior to the latter’s tragic death. They met in August, 1976 as a result of their residence in the same apartment complex. Shortly thereafter, defendant asked Miss Lo Consolo to accompany him to a social function and she agreed. The two apparently dated casually on other occasions until November, 1976 when Miss Lo Consolo informed defendant that she was not "falling in love” with him. Defendant claims that Miss Lo Consolo’s candid statement of her feelings "devastated him.”
Miss Lo Consolo’s rejection of defendant’s advances also precipitated a bizarre series of actions on the part of defendant which, he asserts, demonstrate the existence of extreme emotional disturbance upon which he predicates his affirmative defense. Defendant, aware that Miss Lo Consolo maintained social relationships with others, broke into the apartment below Miss Lo Consolo’s on several occasions to eavesdrop. These eavesdropping sessions allegedly caused him to be under great emotional stress. Thereafter, on one occasion, he broke into Miss Lo Consolo’s apartment while she was out. Defendant took nothing, but, instead, observed the apartment, disrobed and lay for a time in Miss Lo Consolo’s bed. During this break-in, defendant was armed with a knife which, he later told police, he carried "because he knew that he was either going to hurt Victoria or Victoria was going to cause him to commit suicide.”
Defendant’s final visit to his victim’s apartment occurred on February 28, 1977. Defendant brought several bottles of wine and liquor with him to offer as a gift. Upon Miss Lo Consolo’s rejection of this offering, defendant produced a steak knife which he had brought with him, stabbed Miss Lo Consolo several times in the throat, dragged her body to the bathroom and submerged it in a bathtub full of water to "make sure she was dead.”
The following day the police investigation of Miss Lo Conso *673 lo’s death began. On the evening of March 1, 1977, Nassau County Police detectives came to the apartment building in which the crime had occurred. They were in the process of questioning several of the residents of the building when defendant presented himself to the police and volunteered that he had been in the victim’s apartment on the night of the murder. While denying any involvement in the murder of Miss Lo Consolo, he professed a willingness to co-operate in the investigation.
The police accepted his offer of co-operation and requested that he accompany them to the Nassau County police headquarters in Mineóla to discuss the matter further. On the way to Mineóla, defendant was informed of his constitutional rights. He indicated that he understood his rights and that he nonetheless wished to co-operate. Defendant was interrogated by police for some nine and one-half hours thereafter and at 5:00 a.m. on the morning of March 2, 1977, he fully confessed to the murder of Victoria Lo Consolo, giving the police several oral and written statements detailing his involvement in the crime.
During the course of defendant’s interrogation, his mother, worried because her son had not appeared at a planned social gathering, telephoned the Hempstead police to report her son as a missing person. She made several calls to the Hempstead Police Department and at least one to the Nassau County Police Department’s seventh precinct in Manhasset between the hours of 11:00 p.m. on March 1, 1977 and 3:00 a.m. on March 2, 1977, and was informed by the officers at these stations that her son’s whereabouts were unknown. She then telephoned the apartment of Victoria Lo Consolo. The officer on duty there told her of the murder and gáve her no further information, but said that the police would return her call. At 4:00 a.m., having received no further information, she called the apartment again. This time another officer gave her a telephone number to call to seek further information about her son. A call to this number at 5:00 a.m. was also unavailing. However, a subsequent call to the Hempstead police yielded yet another number at the Nassau County Police Department. When Mrs. Casassa called this number, she was accurately informed that her son was held for questioning as a suspect in the Lo Consolo homicide. Thereafter, she came to the station and arranged to have counsel provided for her son.
On March 8, 1977, defendant was indicted and charged with *674 murder in the second degree. Defendant made several pretrial motions seeking to suppress his statements to police and several pieces of real evidence which had been given to police during questioning. After a hearing, the motions were denied.
Defendant waived a jury and proceeded to trial before the County Court. The minutes of the suppression hearing were incorporated into the trial transcript and defendant’s confessions were received into evidence. The defendant did not contest the underlying facts of the crime. Instead, the sole issue presented to the trial court was whether the defendant, at the time of the killing, had acted under the influence of "extreme emotional disturbance”. (Penal Law, § 125.25, subd 1, par [a].) The defense presented only one witness, a psychiatrist, who testified, in essence, that the defendant had become obsessed with Miss Lo Console and that the course which their relationship had taken, combined with several pérsonality attributes peculiar to defendant, caused him to be under the influence of extreme emotional disturbance at the time of the killing.
In rebuttal, the People produced several witnesses. Among these witnesses was a psychiatrist who testified that although the defendant was emotionally disturbed, he was not under the influence of "extreme emotional disturbance” within the meaning of section 125.25 (subd 1, par [a]) of the Penal Law because his disturbed state was not the product of external factors but rather was "a stress he created from within himself, dealing mostly with a fantasy, a refusal to accept the reality of the situation.”
The trial court in resolving this issue noted that the affirmative defense of extremé emotional disturbance may be based upon a series of events, rather than a single precipitating cause. In order to be entitled to the defensé, the court held, a defendant must show that his reaction to such events was reasonable. In determining whether defendant’s emotional reaction was reasonable, the court considered the appropriate test to be whether in the totality of the circumstances the finder of fact could understand how a person might have his reason overcome. Concluding that the test was not to be applied solely from the viewpoint of defendant, the court found that defendant’s emotional reaction at the time of the commission of the crime was so peculiar to him that it could not be considered reasonable so as to reduce the conviction to manslaughter in the first degree. Accordingly, the trial court *675 found defendant guilty of the crime of murder in the second degree. The Appellate Division affirmed, without opinion.
On this appeal defendant contends that the trial court erred in failing to afford him the benefit of the affirmative defense of "extreme emotional disturbance”. It is argued that the defendant established that he suffered from a mental infirmity not arising to the level of insanity which disoriented his reason to the extent that his emotional reaction, from his own subjective point of view, was supported by a reasonable explanation or excuse. Defendant asserts that by refusing to apply a wholly subjective standard the trial court misconstrued section 125.25 (subd 1, par [a]) of the Penal Law. We cannot agree.
Section 125.25 (subd 1, par [a]) of the Penal Law provides that it is an affirmative defense to the crime of murder in the second degree where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse.” This defense allows a defendant charged with the commission of acts which would otherwise constitute murder to demonstrate the existence of mitigating factors which indicate that, although he is not free from responsibility for his crime, he ought to be punished less severely by reducing the crime upon conviction to. manslaughter in the first degree. (Penal Law, § 125.25, subd 1, par [a]; People v Patterson, 39 NY2d 288, 302, affd sub nom. Patterson v New York, 432 US 197; see, also, Wechsler, Codification of Criminal Law in the United States: The Model Penal Code, 68 Col L Rev 1425, 1446.)
In enacting section 125.25 (subd 1, par [a]) of the Penal Law, the Legislature adopted the language of the manslaughter provisions of. the Model Penal Code (see § 201.3, subd [1], par [b] [Tent Draft No. 9]). The only substantial distinction between the New York statute and the Model Penal Code is the designation by the Legislature of "extreme emotional disturbance” as an "affirmative defense”, thus placing the burden of proof on this issue upon defendant. (Penal Law, § 25.00, subd 2; People v Patterson, 39 NY2d 288, 301, supra.) The Model Penal Code formulation, however, as enacted by the Legislature, represented a significant departure from the prior law of this State.
The "extreme emotional disturbance” defense is an outgrowth of the "heat of passion” doctrine which had for some time been recognized by New York as a distinguishing factor *676 between the crimes of manslaughter and murder. (See 1829 Rev Stat of New York, Part IV, ch I, tit II, §§ 10, 12, 18; L 1881, ch 676, § 189, subd 2; § 193, subd 2; Penal Law of 1909, § 1052, subd 2.) However, the new formulation is significantly broader in scope than the "heat of passion” doctrine which it replaced. (People v Patterson, 39 NY2d 288, 302-303, supra; People v Shelton, 88 Misc 2d 136, 141-142; Notes of the Staff of the State Commission on Revision of the Penal Law and Criminal Code, 1967 Gilbert, Criminal Law and Practice of New York, pp 1C-61-62; Model Penal Code, § 201.3, Comment, pp 46-47 [Tent Draft No. 9].)
For example, the "heat of passion” doctrine required that a defendant’s action be undertaken as a response to some provocation which prevented him from reflecting upon his actions. (See, e.g., People v Ferraro, 161 NY 365, 375.) Moreover, such reaction had to be immediate. The existence of a "cooling off” period completely negated any mitigating effect which the provocation might otherwise have had. (See, e.g., People v Florentino, 197 NY 560, 563.) In Patterson, however, this court recognized that "[a]n action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken. Rather, it may be that a significant mental trauma has affected a defendant’s mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore.” (39 NY2d, at p 303.) This distinction between the past and present law of mitigation, enunciated in Patterson, was expressly adopted by the trial court and properly applied in this case.
The thrust of defendant’s claim, however, concerns a question arising out of another perceived distinction between "heat of passion” and "extreme emotional disturbance” which was not directly addressed in Patterson, to wit: whether, assuming that the defense is applicable to a broader range of circumstances, the standard by which the reasonableness of defendant’s emotional reaction is to be tested must be an entirely subjective one. Defendant relies principally upon our decision in Patterson and upon the language of the statute to support his claim that the reasonableness of his "explanation or excuse” should be determined solely with reference to his own subjective viewpoint. Such reliance is misplaced.
In Patterson, this court was concerned with the question of whether the defendant could properly be charged with the burden of proving the affirmative defense of "extreme emo *677 tional disturbance”. In deciding that the defendant could constitutionally be required to carry such a burden, we noted that "[t]he purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is. less culpable for having committed them.” (39 NY2d, at p 302.) We also noted that "[t]he differences between the present New York statute and its predecessor * * * can be explained by the tremendous advances made in psychology since 1881 and a willingness on the part of the courts, legislators, and the public to reduce the level of responsibility imposed on those whose capacity has been diminished by mental trauma.” (Id., at p 303.) These comments, however, were relevant to our decision only insofar as they demonstrated that the affirmative defense of "extreme emotional disturbance” is a mitigating factor which the defendant must prove as opposed to a substantive element of the crime of murder which the People must prove.
Defendant, however, would read Patterson as holding that all mental infirmity, short of insanity, must constitute "extreme emotional disturbance” if such infirmity causes the defendant to become emotionally disturbed and the defendant subjectively believed his disturbance had a reasonable explanation or excuse. While it is true that the court in Patterson recognized that "extreme emotional disturbance” as contemplated by the statute is a lesser form of mental infirmity than insanity,[1] the court did not hold that all mental infirmities not arising to the level of insanity constitute "extreme emotional disturbance” within the meaning of the statute. This question was not presented to us in Patterson and we did not decide it. Defendant’s attempt to further extend our holding in Patterson to support the proposition that the reasonableness of the explanation or excuse for defendant’s emotional disturbance must be tested from the subjective viewpoint of defendant is *678 completely unavailing, for that case had nothing whatever to do with this issue.
Having determined that our decision in Patterson does not require that reasonableness be tested with a completely subjective standard, we must now determine whether the language of the statute or the legislative history of the statute indicates that such a standard is required.
Section 125.25 (subd 1, par [a]) of the Penal Law states it is an affirmative defense to the crime of murder that "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be.” Whether the language of this statute requires a completely subjective evaluation of reasonableness is a question that has never been decided by this court, although it has been raised in our lower courts with diverse results. (Compare People v Shelton, 88 Misc 2d 136, supra, with People v Lyttle, 95 Misc 2d 879, 884.) Moreover, although several States have enacted identical or substantially similar statutes (see Conn Gen Stat Ann, § 53a-54, subd [a], par [1]; Del Code Ann, tit 11, § 641; Hawaii Penal Code, § 707-702, subd [2]; Ky Rev Stat, § 507.020, subd [1], par [a]; Rev Codes of Mont, § 94-5-103; ND Century Code, § 12.1-16-02; Ore Rev Stat, § 163.115; Utah Code Ann, § 76-5-205), only one decision of the highest court of any of our sister States which has addressed this question has been called to our attention (State v Elliott, 177 Conn 1) and that court expressly followed Justice Bentley Kassal’s well-reasoned opinion in People v Shelton (88 Misc 2d 136, supra).
Consideration of the Comments to the Model Penal Code, from which the New York statute was drawn, are instructive. (Model Penal Code, § 201.3, Comment [Tent Draft No. 9 (1959)].) The defense of "extreme emotional disturbance” has two principal components — (1) the particular defendant must have "acted under the influence of extreme emotional disturbance”, and (2) there must have been "a reasonable explanation or excuse” for such extreme emotional disturbance, "the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be”. The first requirement is wholly subjective — i.e., it involves a determina *679 tion that the particular defendant did in fact act under extreme emotional disturbance, that the claimed explanation as to the cause of his action is not contrived or sham.
The second component is more difficult to. describe — i.e., whether there was a reasonable explanation or excuse for the emotional disturbance. It was designed to sweep away "the rigid rules that have developed with respect to the sufficiency of particular types of provocation, such as the rule that words' alone can never be enough” (id., at pp 46-47), and "avoids a merely arbitrary limitation on the nature of the antecedent circumstances that may justify a mitigation” (id.). "The ultimate test, however, is objective; there must be 'reasonable’ explanation or excuse for the actor’s disturbance” (id., at p 41). In light of these comments and the necessity of articulating the defense in terms comprehensible to jurors, we conclude that the determination whether there was reasonable explanation or excuse for a particular emotional disturbance should be made by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable, so as to entitle him to a reduction of the crime charged from murder in the second degree to manslaughter in the first degree.[2] We recognize that even such a description of the defense provides no precise guidelines and necessarily leaves room for the exercise of judgmental evaluation by the jury. This, however, appears to have been the intent of the draftsmen. "The purpose was explicitly to give full scope to what amounts to a plea in mitigation based upon a mental or emotional trauma of significant dimensions, with the jury asked to show whatever empathy it can.” (Wechsler, Codification of Criminal Law in the United States: The Model Penal Code, 68 Col L Rev 1425, 1446.)
By suggésting a standard of evaluation which contains both subjective and objective elements, we believe that the drafters of the code adequately achieved their dual goals of broadening the "heat of passion” doctrine to apply to a wider range of circumstances while retaining some element of objectivity in *680 the process. The result of their draftsmanship is a statute which offers the defendant a fair opportunity to seek mitigation without requiring that the trier of fact find mitigation in each case where an emotional disturbance is shown — or as the drafters put it, to offer "room for argument as to the reasonableness of the explanations or excuses offered.”
We note also that this interpretation comports with what has long been recognized as the underlying purpose of any mitigation statute. In the words of Mr. Justice Cardozo, referring to an earlier statute: "What we have is merely a privilege offered to the jury to find the lesser degree when the suddenness of the intent, the vehemence of the passion, seems to call irresistably for the exercise of mercy. I have no objection to giving them this dispensing power, but it should be given to them directly and not in a mystifying cloud of words.” (Cardozo, Law and Literature, pp 100-101.) In the end, we believe that what the Legislature intended in enacting the statute was to allow the finder of fact the discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows. Perhaps the chief virtue of the statute is that it allows such discretion without engaging in a detailed explanation of individual circumstances in which the statute would apply, thus avoiding the "mystifying cloud of words” which Mr. Justice Cardozo abhorred.
We conclude that the trial court, in this case, properly applied the statute. The court apparently accepted, as a factual matter, that defendant killed Miss Lo Consolo while under the influence of "extreme emotional disturbance”, a threshold question which must be answered in the affirmative before any test of reasonableness is required. The court, however, also recognized that in exercising its function as trier of fact, it must make a further inquiry into the reasonableness of that disturbance. In this regard, the court considered each of the mitigating factors put forward by defendant, including his claimed mental disability, but found that the excuse offered by defendant was so peculiar to him that it was unworthy of mitigation. The court obviously made a sincere effort to understand defendant’s "situation” and "the circumstances as defendant believed them to be”, but concluded that the murder in this case was the result of defendant’s malevolence rather than an understandable human response deserv *681 ing of mercy. We cannot say, as a matter of law, that the court erred in so concluding. Indeed, to do so would subvert the purpose of the statute.
In our opinion, this statute would not require that the jury or the court as trier of fact find mitigation on any particular set of facts, but, rather, allows the finder of fact the opportunity to do so, such opportunity being conditional only upon a finding of extreme emotional disturbance in the first instance. In essence, the statute requires mitigation to be afforded an emotionally disturbed defendant only when the trier of fact, after considering a broad range of mitigating circumstances, believes that such leniency is justified. Since the trier of fact found that defendant failed to establish that he was acting "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse”, defendant’s conviction of murder in the second degree should not be reduced to the crime of manslaughter in the first degree.
Defendant also urges in support of reversal that the confessions upon which his conviction was predicated were involuntarily given to the police. However, the trial court examined the " 'totality of the circumstances’ ” of defendant’s arrest and subsequent confession (see People v Anderson, 42 NY2d 35, 38) and found, as a factual matter, that defendant’s oral and written statements were given to the police voluntarily. The Appellate Division affirmed this finding. Having carefully examined the record, we find nothing in the circumstances of this case which would lead us to conclude that defendant’s confession was involuntarily obtained as á matter of law.
Finally, defendant contends that his mother’s unsuccessful effort to contact him, aggravated in part by an apparently accidental dissemination of misinformation by the police,[3] denied defendant his right to counsel. While it is true that when an attorney attempts to intercede in a criminal defendant’s behalf and is prevented from doing so by police misinformation, that defendant’s right to counsel is infringed (see, e.g., People v Garofolo, 46 NY2d 592, 600-601), no such infringement is present where, as here, a family member contacts police to report that her son was a "missing person”. Nor is there any evidence in the record to suggest that this is a *682 case such as People v Bevilacqua (45 NY2d 508), where the record supported the inference that the police intentionally deprived the defendant of access to his family in an effort to obtain a confession. It is clear from the record that the defendant, a man of 27 years, consciously chose to confront his interrogators alone. Indeed, it is undisputed that defendant, after being informed of his constitutional rights, did not ever ask to speak with either counsel or any member of his family. Under these circumstances, we cannot say that defendant’s right to counsel has been infringed..
We have examined defendant’s remaining contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

. Defendant also notes that the People’s expert witness stated that a mental disease not arising to the level of insanity could not be considered to be "extreme emotional disturbance” within the meaning of the statute. Of course, to the extent that the witness’ comments can be interpreted as being in conflict with our decision in Patterson, the witness is in error. However, the trial court did not fully adopt this view and, in fact, predicated its decision upon a finding that the emotional disturbance which defendant experienced had no reasonable explanation or excuse. We would note that the trial court could have completely disregarded the witness’ testimony and still have denied the defendant the benefit of the defense. (People v Solari, 43 AD2d 610, 612, affd 35 NY2d 876.)

. We emphasize that this test is to be applied to determine whether defendant’s emotional disturbance, and not the act of killing, was supported by a reasonable explanation or excuse.

. We are informed that the Nassau County police have instituted a system for monitoring the whereabouts of all people in their custody, which should help to avoid the possibility that such misinformation will be given out in the future.