THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT WALKER, Appellant.

First Department, March 22, 1984

APPEARANCES OF COUNSEL

*Barry Stendig* of counsel (*William E. Hellerstein,* attorney), for appellant.

*Susan Corkery* of counsel (*Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

OPINION OF THE COURT

MURPHY, P. J.

The principal issue presented upon this appeal is whether the trial court erroneously refused to submit manslaughter in the first degree to the jury upon the theory that defendant acted under the influence of "extreme emotional disturbance" (Penal Law, § 125.20, subd 2). The defendant was convicted after trial of murder in the second degree (Penal Law, § 125.25, subd 1) and criminal possession of a weapon in the second degree (Penal Law, § 265.03).

Defendant Robert Walker was charged with shooting William Edmunds in the Madrid Bar on November 24, 1980. The Madrid Bar was located on Seventh Avenue between 115th and 116th Streets; it was frequented by high-level drug dealers. According to Lavonia Edmunds, the decedent's sister, defendant had received a consignment of marihuana from her brother, William. The defendant, however, never repaid decedent for this $4,500 consignment. The defendant claimed that he had been robbed of the marihuana. Lavonia had denied defendant's request that she intercede with her brother on defendant's behalf so that he would be given additional consignments.

On the evening of November 24, 1980, William Edmunds encountered defendant in the Madrid Bar. According to witness Warren Hayes, an acquaintance of both individuals, William Edmunds asked defendant for the money owed to him. The defendant maintained that he had no money. Edmunds then asked how defendant could eat in the Madrid Bar if he did not have any money. The defendant continued the argument by stating that Edmunds was not going to obtain his money and that Edmunds could give his money to the defendant. Edmunds countered by stating that the only "dough" the defendant would obtain was in the bread on the table. At that point, Edmunds apparently placed his hands on defendant's plate.

According to Hayes and Annibell Carithers, a waitress, defendant stood up and shot Edmunds three times. Stacey Garner, a drug seller and a drug addict, was standing outside the Madrid Bar. After the shooting, she saw the defendant exit the bar; he was holding a gun that was partially covered by a jacket. The defendant walked down Seventh Avenue toward 115th Street.

The trial court was not required to charge the affirmative defense based upon "extreme emotional disturbance" (Penal Law, § 125.25, subd 1, par [a]) unless the evidence sufficiently established the elements of that affirmative defense (People v Watts, 57 NY2d 299). At trial, the defense attorney argued that defendant had acted in anger because he had been embarrassed by the decedent. Upon this appeal, an alternative argument is made that defendant shot the decedent because the latter had "cut off" the

former from the drug trade. Upon this record, many other motives might be advanced for defendant's action. For example, immediately prior to the occurrence, he asked decedent for his money. It could be argued that defendant's request was a veiled attempt to rob the decedent.

It is possible that defendant acted in anger or for revenge. It is also possible that he shot decedent very calmly and unemotionally. In that regard, it should be stressed that the defendant "walked" rather than "ran" from the bar after the incident. Anger, revenge and other emotions may serve as a "reasonable explanation" for the presence of an "extreme emotional disturbance". (Penal Law, § 125.25, subd 1, par [a]; *People v Shelton,* 88 Misc 2d 136, 149, affd 78 AD2d 821.) However, it does not follow that defendant was influenced by an "extreme emotional disturbance" merely because he may have acted in anger or for revenge.

Moreover, there was no specific evidence submitted at trial that established that the defendant was influenced by an "extreme emotional disturbance". The defendant himself did not testify. He did not call any psychiatrist or psychologist to prove his affirmative defense. None of the witnesses even described his physical, emotional and mental state at the time of the shooting.

In sum, the trial court properly denied the defense request to charge an affirmative defense under section 125.25 (subd 1, par [a]) of the Penal Law together with a reduced charge on manslaughter in the first degree under subdivision 2 of section 125.20 of the Penal Law. The evidence was not sufficient to warrant such a charge. The jury would have been impermissibly asked to find that defendant was influenced by an "extreme emotional disturbance" in the absence of any specific proof of that affirmative defense. The other trial evidence would have merely permitted the jury to speculate as to defendant's motivation in shooting. Speculation of that sort would have been improper. In any event, even if it were assumed that defendant acted in anger or for revenge, it did not follow that he was in any way influenced by an "extreme emotional disturbance". The defendant did not show that he lost " 'self-control' " (*People v Shelton,* 88 Misc 2d 136, 143, affd 78 AD2d 821, *supra*) or that his action was caused by a

"mental infirmity" not rising to the level of insanity (*People v Patterson*, 39 NY2d 288, 302, affd 432 US 197).

The prosecution concedes that defendant was improperly sentenced on his conviction for criminal possession of a weapon in the second degree (Penal Law, § 265.03). The prosecution acknowledges that defendant was sentenced as a second felony offender on that crime but that a predicate felony statement was never filed (CPL 400.21). The matter must be remanded for resentencing on that conviction. We find no merit to the other points raised by the defendant.

Accordingly, the judgment of the Supreme Court, New York County (LEVITTAN, J.), rendered on November 23, 1981, convicting defendant after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree and sentencing him to concurrent indeterminate prison terms of from 15 years to life on the murder count and from 5 to 10 years on the weapons count, should be modified, on the law, by reversing so much thereof as sentenced defendant on the weapons count, by remanding that matter for resentencing, and as modified, the judgment should otherwise be affirmed.

The order of the Supreme Court, New York County (LEVITTAN, J.), dated September 9, 1982, which denied defendant's motion to set aside the judgment of conviction because of the ineffective assistance of counsel, should be affirmed.

SANDLER, J. (dissenting in part). The principal issue on defendant's appeal from his conviction for murder in the second degree and criminal possession of a weapon is presented by the contention that the trial court erred in failing to submit to the jury the affirmative defense set forth in section 125.25 of the Penal Law, which in effect reduces to manslaughter in the first degree an intentional killing that would otherwise be murder in the second degree if: "1 * * * (a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." In my opinion the failure to charge the affirmative defense under the circumstances

presented in this trial was reversible error, and that part of the judgment convicting defendant of murder in the second degree should accordingly be vacated and the case remanded for a new trial on that count in the indictment. For reasons set forth in the court's opinion, I agree that the defendant's sentence on the weapons count should also be vacated and the matter remanded additionally for resentencing on that count.

The issue presented on this appeal is an important one. The facts developed at the trial raise fundamental questions as to the meaning and application of section 125.25 (subd 1, par [a]) of the Penal Law and the counterpart language in subdivision 2 of section 125.20 of the Penal Law, defining one form of manslaughter in the first degree. More precisely the issue is whether the courts will give effect to the significant change in law explicitly intended to have been brought about by the distinguished scholars who drafted section 210.3 (subd [1], par [b]) of the Model Penal Code, which formulation was adopted by the Legislature in the enactment of section 125.25 (subd 1, par [a]), with the single substantial distinction that the New York statute placed the burden of proof on this issue upon the defendant.

The character of the change intended to be brought about was set forth by the authors of the Model Penal Code section clearly and in detail, and it cannot be doubted that those responsible for the enactment of the Model Penal Code formulation in the statutory law of this State were fully aware of that which was intended. The concern of the draftsmen of section 210.3 (subd [1], par [b]) of the Model Penal Code was to change significantly the rules of law that had developed under the traditional common-law rule that defined homicide, even if intentional, as manslaughter "if committed in the heat of passion upon adequate provocation." (Model Penal Code and Commentaries, Part II, § 210.3, p 44.) The central purpose was to avoid "the strictures of early precedents" and "to abandon preconceived notions of what constitutes adequate provocation and to submit that question to the jury's deliberation" (Model Penal Code and Commentaries, Part II, § 210.3, p 61).

This change was intended to be achieved in essentially two ways. First, the words "heat of passion" were replaced by the phrase "under the influence of extreme mental or emotional disturbance" so as to expand the concept to include, not only that which had been embraced previously under "heat of passion", but also consideration as a basis for mitigation of events which traditionally were regarded as having been sufficiently distant in time from the homicide to permit the defendant a cooling-off period. (See Model Penal Code and Commentaries, Part II, § 210.3, p 59.)

Secondly, in replacing the traditional formula of adequate provocation by the words "under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse * * * to be determined from the viewpoint of a person in the defendant's situation", it was intended to sweep away "the rigid rules that limited provocation to certain defined circumstances." (See Model Penal Code and Commentaries, Part II, § 210.3, p 61.) As here pertinent, it was explicitly intended to discard the general rule at common law "that words alone, no matter how insulting, could not amount to adequate provocation." (See Model Penal Code and Commentaries, Part II, § 210.3, p 58; see, also, Insulting Words as Provocation of Homicide or as Reducing the Degree Thereof, Ann., 2 ALR3d 1292.)

In declining to charge the affirmative defense in this case the trial court may well have applied correctly the traditional rule that had prevailed in the courts of this country. Quite understandably, since the legislative background appears not to have been called to the trial court's attention, the court failed to appreciate that the rule it was attempting to follow was one of those intended to be discarded in favor of the central principle that where there is evidence of extreme emotional disturbance "it is for the trier of fact to decide, in light of all the circumstances of the case, whether there exists a reasonable explanation or excuse for the actor's mental condition." (See Model Penal Code and Commentaries, Part II, § 210.3, p 61.)

The deceased, William Edmunds, was a drug dealer of sufficient stature in his trade that he had in his employ

many individuals to whom he consigned significant quantities of narcotics on the agreement that they would refund to him a substantial part of the proceeds of their sales. The defendant had been in the employ of the deceased in this capacity for some period of time. A time came when the defendant failed to refund to the deceased some $4,500 representing the deceased's share of an allotment of drugs to the defendant, defendant claiming that he was unable to do so because he had been the victim of a robbery. The deceased did not believe this explanation and terminated the defendant's employment, and adhered to this decision in response to several pleas by the defendant to be given additional narcotics to sell.

On the evening of November 24, 1980, the defendant was having dinner with an unidentified young woman in a bar-restaurant described in the testimony as an expensive place which was favored by high-level drug dealers. The deceased entered the restaurant and went over to where the defendant was having dinner. A witness heard an angry argument between the two in which the deceased demanded his money, the defendant responded that he did not have any money, and the deceased asked how he could afford to eat in the restaurant if he did not have any money. The defendant was then heard to say that the deceased should give him money, to which the deceased responded that "the only dough you're going to get is the dough in that bread", apparently referring to that which the defendant was eating. The defendant was then heard to say, "Take your damn hand out of my plate", after which he rose, gun in hand, and fired one shot that was quickly followed by two additional shots.

Although defense counsel sought by cross-examination, and thereafter in summation, to establish that the defendant had been falsely identified as the killer, the evidence is quite conclusive that the defendant in fact fired the shots that killed the deceased. The record discloses no error other than that which I believe occurred when the trial court denied defense counsel's application to charge the affirmative defense described above.

The New York Court of Appeals addressed at length issues arising out of section 125.25 (subd 1, par [a]) of the

Penal Law in two opinions, *People v Patterson* (39 NY2d 288, affd 432 US 197) and *People v Casassa* (49 NY2d 668). Neither case required the Court of Appeals to determine directly the issue presented on this appeal, but both opinions, and particularly the opinion in *People v Casassa,* are instructive here. Indeed, I believe the analysis in *Casassa* is dispositive.

The principal issue confronting the Court of Appeals in *People v Patterson* (*supra*) was raised by the decision of the United States Supreme Court in *Mullaney v Wilbur* (421 US 684) in which the Supreme Court, passing on a Maine statute, held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." (*Mullaney v Wilbur, supra,* at p 704.) The issue that divided the Court of Appeals was whether or not the *Mullaney* decision required "the striking down of sections 125.20 and 125.25 of the Penal Law to the extent that they require a defendant charged with murder to bear the burden of proving the affirmative defense that he acted under the influence of extreme emotional disturbance." (See *People v Patterson, supra,* at p 294.) A closely divided Court of Appeals concluded that the *Mullaney* decision did not invalidate the affirmative defense aspect of those two sections, a decision thereafter sustained by the Supreme Court.

Although the facts in the *Patterson* case (*supra*) are of secondary importance, it is of some interest to note that the trial court in that case had submitted the affirmative defense to the jury in a case in which the defendant, whose wife had previously separated from him, observed her in a state of semiundress in the presence of a male friend and killed that male friend, and in which the principal defense presented at the trial was that the crime was unintentional. The opinions of the Court of Appeals in *Patterson* necessarily focused on the constitutional issue that divided the court. To the extent to which the majority opinion addressed the significance of the change introduced by the enactment into New York law of the Model Penal Code formulation, it focused primarily on the elimination of the previous requirement that the fatal action had to be an

immediate response to the claimed provocation. As to this, the Court of Appeals noted (39 NY2d, at p 303): "An action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken." The court went on to observe (at p 303): "The differences between the present New York statute and its predecessor and its ancient Maine analogue can be explained by the tremendous advances made in psychology since 1881 and a willingness on the part of the courts, legislators, and the public to reduce the level of responsibility imposed on those whose capacity has been diminished by mental trauma. It is consistent with modern criminological thought to reduce the defendant's criminal liability upon proof of mitigating circumstances which render his conduct less blameworthy."

More directly significant to the issue presented in this appeal is the opinion of the Court of Appeals in *People v Casassa* (*supra*). *Casassa* was an appeal by a defendant who had been convicted after a nonjury trial in which the Judge considered the issue presented by the affirmative defense and concluded that it was not established under the circumstances of the case. After a brief period of casual dating between the deceased and Casassa, she informed the defendant that she was not in love with him and undertook to terminate the relationship. This rejection of the defendant's advances precipitated a "bizarre series of actions on the part of defendant" (at p 672) climaxed by the fatal assault. The totality of his actions was claimed by the defense to demonstrate the existence of extreme emotional disturbance. Conflicting psychiatric testimony was presented.

The trial court rejected the affirmative defense on the essential ground that defendant's emotional reaction at the time of the commission of the crime was so peculiar to him that it could not be considered reasonable so as to reduce the conviction to manslaughter in the first degree.

In sustaining the judgment of conviction, the Court of Appeals carefully reviewed the circumstances surrounding the adoption of the Model Penal Code formulation into the law of this State. It noted that the Model Penal Code formulation "represented a significant departure from the

prior law of this State" (49 NY2d, at p 675), and that the "new formulation is significantly broader in scope than the 'heat of passion' doctrine which it replaced" (at p 676). It noted specifically the demise of the prior requirement that the defendant's action must be an immediate response to the claimed provocation (at p 676).

The court went on to consider carefully the Comments to the Model Penal Code, at that time embodied in Tentative Draft No. 9. From that study, the court concluded that the first requirement of the formulation, extreme emotional disturbance, "is wholly subjective — i.e., it involves a determination that the particular defendant did in fact act under extreme emotional disturbance, that the claimed explanation as to the cause of his action is not contrived or sham" (49 NY2d, at pp 678-679).

The court further noted (at p 679): "The second component is more difficult to describe — i.e., whether there was a reasonable explanation or excuse for the emotional disturbance. It was designed to sweep away 'the rigid rules that have developed with respect to the sufficiency of particular types of provocation, such as the rule that words alone can never be enough' * * * and 'avoids a merely arbitrary limitation on the nature of the antecedent circumstances that may justify a mitigation' * * * 'The ultimate test, however, is objective; there must be "reasonable" explanation or excuse for the actor's disturbance' ".

From the foregoing analysis of the Comments to the Model Penal Code, the Court of Appeals concluded (at p 679): "In light of these comments and the necessity of articulating the defense in terms comprehensible to jurors, we conclude that the determination whether there was reasonable explanation or excuse for a particular emotional disturbance should be made by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable, so as to entitle him to a reduction of the crime charged from murder in the second degree to manslaughter in the first degree. We recognize that even such a descrip-

tion of the defense provides no precise guidelines and necessarily leaves room for the exercise of judgmental evaluation by the jury. This, however, appears to have been the intent of the draftsmen. 'The purpose was explicitly to give full scope to what amounts to a plea in mitigation based upon a mental or emotional trauma of significant dimensions, with the jury asked to show whatever empathy it can.' (Wechsler, Codification of Criminal Law in the United States: The Model Penal Code, 68 Col L Rev 1425, 1446.)"

The Court of Appeals held in *Casassa* (49 NY2d 668, *supra*) that it could not say as a matter of law that the trial court erred in its judgment that the murder was "the result of defendant's malevolence rather than an understandable human response deserving of mercy" (at pp 680-681). Significantly, nothing in the court's opinion in *Casassa* suggests that the issue had not been an appropriate one for the factual consideration of the trier of the facts. Indeed, the thrust of the opinion is that the evidence in *Casassa* presented a factual issue for the trier of the facts, in that case, a Judge, and that he did not err as a matter of law in rejecting the affirmative defense.

Turning to the facts presented in this case, the threshold issue clearly is whether there is evidence that the defendant "acted under the influence of extreme emotional disturbance". As we have been instructed by the Court of Appeals in *Casassa,* this requirement "is wholly subjective" (*supra,* at p 678). From the evidence presented at the trial the jury could reasonably have found that the defendant killed the deceased in a burst of anger, that a smoldering sense of grievance had been ignited by insulting and contemptuous words and actions.

Indeed, I find it difficult to see how a jury could have reasonably reached any other conclusion as to the defendant's state of mind. The evidence that would justify the jury's conclusion that the defendant acted during a moment of violent anger is "evidence of extreme emotional disturbance" more than sufficient to have required the submission of that issue, a subjective one, to the jury for its determination.

I am unable to discern in the statutory language, the detailed comments of the authors of the Model Penal Code, the legislative history surrounding the enactment of section 125.25 of the Penal Law, or the several reported opinions dealing with issues relating to that section, any shred of support for the perplexing suggestion in the court's opinion that "evidence of extreme emotional disturbance" sufficient to make that subjective issue a jury question requires that the defendant testify, or present psychiatric testimony, or that lay witnesses testify that the defendant appeared angry or upset at the time of the homicidal event. It does not follow from the fortuitous presence of one or more such circumstances in the few cases that became the subject of reported opinions that the presence of any one or more such circumstances has become a legal precondition to submitting to the jury what on the facts of this case is manifestly a jury question.

In an effort to avoid what understandably is felt to be an undesirable result in an unsympathetic case, an opinion has been developed that distorts radically and fundamentally the clear meaning and intent of section 125.25 of the Penal Law, and reintroduces into this area of law "preconceived notions" and "rigid rules" similar to those that the statutory section was so carefully and painstakingly designed to sweep away. It seems to me inevitable that the court's opinion will become a source of confusion and error in other trials, that Trial Judges, confronted with what the Judges personally regard as unpersuasive claims for mitigation, will find in this court's opinion one or more plausible reasons for deciding as a matter of law issues that were clearly intended to be determined by a jury.

Once it is determined that there was "evidence of extreme emotional disturbance", the controlling rule is clear, and indeed not disputed in the majority memorandum: "it is for the trier of fact to decide, in light of all the circumstances of the case, whether there exists a reasonable explanation or excuse for the actor's mental condition". (Model Penal Code and Commentaries, Part II, § 210.3, p 61.)

"In the end, the question is whether the actor's loss of self-control can be understood in terms that arouse sympa-

thy in the ordinary citizen. Section 210.3 faces this issue squarely and leaves the ultimate judgment to the ordinary citizen in the function of a juror assigned to resolve the specific case". (Model Penal Code and Commentaries, Part II, § 210.3, p 63.)

This is not a sympathetic case. The plight of a narcotics dealer cut off from his source of supply, and then subjected to insulting and contemptuous words and actions by his former supplier, is not likely to evoke widespread feelings of acute compassion. Nevertheless, it is clear that the controlling statutory sections were carefully designed to permit the essential judgment on the kind of issue presented here to be made by jurors on the basis of all the circumstances, and not by the Trial Judge as a matter of law.

Accordingly, the judgment of the Supreme Court, New York County (SHIRLEY R. LEVITTAN, J.), rendered on November 23, 1981, convicting defendant after a jury trial of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent indeterminate prison sentences of 15 years to life on the murder charge and from 5 to 10 years on the weapons charge, should be modified, on the law, to reverse the defendant's conviction for murder in the second degree and that count in the indictment should be remanded for a new trial, and also to vacate defendant's sentence on the weapons count, and remand that aspect of the case for resentencing.

KUPFERMAN, ROSS and ALEXANDER, JJ., concur with MURPHY, P. J.; SANDLER, J., dissents in part in an opinion with respect to the judgment.

Judgment, Supreme Court, New York County, rendered on November 23, 1981, modified, on the law, by reversing so much thereof as sentenced defendant on the weapon's count, by remanding that matter for resentencing, and as modified, the judgment is affirmed. The order of said court, entered on September 9, 1982, is unanimously affirmed.