■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GLENN DAVID, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Suffolk County (Vaughn, J.), rendered December 14, 1983, convicting him of murder in the second degree, arson in the third degree, and assault in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to the police.

Ordered that the judgment is affirmed.

On June 15, 1983, the defendant brutally murdered his 22-year-old wife by slashing her neck as she sat on the living room couch and then chasing her into the bedroom where he stabbed her nine times in the chest. His two children, aged four and five, saw him cut their mother's neck before being told to leave the house. The defendant then proceeded to set their home on fire, before stabbing himself in the chest. He was rescued by firefighters and taken to the hospital for treatment of a punctured lung and smoke inhalation. His wife was pronounced dead on arrival. Although the defendant admitted to these acts at trial, he maintained that he murdered his wife while under the influence of extreme emotional disturbance precipitated by his discovery that she had become involved in a relationship with another man.

On the day of the crime, two Suffolk County Police detectives arrived at the hospital to learn from the defendant whether an intruder was responsible for the crime. The defendant had a tube down his throat which prevented him from speaking, but emergency room personnel assured the detectives that the defendant was alert, that he was not in shock, and that he had not been given any drugs which might affect his mind. The detectives identified themselves, explained that they were investigating the fire at his home, and asked him to nod his head if he understood. When asked whether there had been an intruder in the house and whether his wife had set the fire and stabbed him, the defendant responded negatively. When asked if he had ignited the fire and stabbed his wife, the defendant responded affirmatively. Hospital personnel were present in the emergency room throughout the interview. Before the detectives left the room, the nurse on duty asked whether the defendant was under arrest and the detectives stated that he was not in custody.

The following day, June 16th, 1983, the detectives returned to the hospital. The defendant had been moved to a bed in a large open room having several other beds. The tube had been removed from his throat and he was able to speak without difficulty. The detectives identified themselves and then read the defendant the *Miranda* warnings. The defendant indicated that he understood his constitutional rights and that he nonetheless wanted to speak with the detectives. He fully confessed to the murder of his wife, explaining that they argued when he found a letter in her purse alluding to her relationship with another man. Although he was very angry, they attempted a reconciliation only to realize that their relationship would never be the same because "she wasn't pure anymore". According to the defendant, she wanted him to kill her and he complied. The defendant was not arrested until he was discharged from the hospital on June 22, 1983.

We find no basis for disturbing the suppression court's finding, which is supported by the weight of the evidence, that the defendant's privilege against self-incrimination was not implicated by the noncustodial interrogation on June 15th *(see, People v Bertolo,* 65 NY2d 111; *People v Prochilo,* 41 NY2d 759, 761). With respect to the confession made by the defendant on June 16th subsequent to having been apprised of his constitutional rights, the People have sustained their burden of proving beyond a reasonable doubt that the confession was voluntarily made *(People v Huntley,* 15 NY2d 72, 78).

Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]) and that the defendant's conviction of murder in the second degree should not be reduced to the crime of manslaughter in the first degree. Although the defendant through his own testimony and that of a psychiatrist attempted to establish that he acted under the influence of "extreme emotional disturbance" at the time of the killing (Penal Law § 125.25 [1] [a]), the People presented evidence that the defendant was a jealous abusive husband who had repeatedly threatened to kill his wife even prior to learning of her alleged infidelity. The jury could have reasonably inferred from the testimony adduced at trial that the defendant's actions were rational and the result of his malevolence, rather than an uncontrollable response to his wife's alleged unfaithfulness. Moreover, even if the jury did accept that the defendant murdered his wife while under the influence of "extreme emotional disturbance", it was entitled to reject the excuse offered by the defendant for this emotional state as so unrea-

sonable that it did not warrant mitigation *(see, People v Casassa,* 49 NY2d 668, 681, *cert denied* 449 US 842).

In imposing the maximum sentence authorized by law, the trial court applied appropriate sentencing principles, including deterrence, rehabilitation, retribution, and isolation *(see, People v Suitte,* 90 AD2d 80).

We have considered the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, and find them to be without merit. Mangano, J. P., Brown, Sullivan and Harwood, JJ., concur.