(March 7, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TOMMIE C. KNIGHTS, Appellant. — Yesawich, Jr., J. Appeal from a judgment of the Supreme Court at Trial Term (Ellison, J.), rendered January 31, 1983 in Chemung County, upon a verdict convicting defendant of the crime of murder in the second degree.

On the evening of July 9, 1982, defendant engaged in a vehement argument with his wife, Louise Knights, regarding her whereabouts earlier that evening. Awakened by the quarrelling, defendant's stepson, James Abrams, went to his parents' bedroom where he observed defendant striking his mother about the head with a metal pipe. When she urged her son to summon the police, defendant threatened the boy, stating, "Come in here, I want all of you." While running downstairs to a neighbor's apartment, James heard his mother scream for help; that ceased just as the neighbor finished telephoning the police. When the police arrived, they found Mrs. Knights lying on her back in a corner of the bedroom, covered with blood, dead; an autopsy disclosed she died of hemorrhage and shock resulting from 26 knife wounds. Next to her was defendant, also lying on his back; he had lacerations on both hands and a large knife imbedded in his chest. Asked by the police what had happened, defendant replied "[t]hey killed us" or "[t]hey stabbed us", and then declared that Mrs. Knights had stabbed him. A pipe apparently smeared with her blood and hair was found near Mrs. Knights.

Defendant was removed to the hospital where he was then questioned by the police on July 11 and 12, 1982.

On this appeal from his conviction after trial of the crime of second degree murder, defendant first contends that the trial court erred in refusing to instruct the jury as to the affirmative defense of extreme emotional disturbance. To merit this particular instruction, one charged with the commission of acts which would otherwise constitute murder must demonstrate "the existence of mitigating factors which indicate that, although he is not free from responsibility for his crime, he ought to be punished less severely by reducing the crime [of murder] upon conviction to manslaughter in the first degree" (*People v Casassa,* 49 NY2d 668, 675, *cert denied* 449 US 842; *see,* Penal Law § 125.25 [1] [a]). The aim of this defense is to mitigate the degree of a defendant's liability without diminishing his mental culpability for the crime (*People v Casassa, supra,* p 679).

At trial, the defense advanced was not that defendant had killed his wife and had done so while suffering from a mental infirmity which rendered him less culpable, but, rather, that defendant had done so unintentionally because of the drug-impaired and intoxicated state he was in at the time. Evidence of defendant's ingestion of drugs and alcohol was introduced for the purpose of sustaining the proposition that he lacked the mental state needed for intentional murder in the second degree. But because intoxication "neither excuses nor mitigates the offense" (*People v Edwards,* 64 AD2d 201, 202), evidence thereof does not bear on the defense of extreme emotional disturbance.

The fact that defendant had argued with his wife about her whereabouts earlier that evening and two months earlier had notified the police of his irritation regarding her immoral behavior is insufficient to give substance to the defense. At most, this evidence demonstrated that defendant acted out of anger; though a strong emotion, it is not one generally indicative of the loss of self-control associated with an " 'extreme emotional disturbance' " (*see, People v Walker,* 64 NY2d 741, 742).

It is also noteworthy that, as a result of the intoxication defense, the trial court charged the jury with respect to the lesser included offenses of manslaughter in the first and second degrees and criminally negligent homicide; the affirmative defense of extreme emotional disturbance would have warranted charging only manslaughter in the first degree as a lesser included offense. Consequently, even if the trial court erred in determining that no reasonable view of the evidence supported the defense of extreme emotional disturbance, that error was

harmless for it resulted in a jury charge more favorable to defendant.

Also unpersuasive is the assertion that the trial court ruled erroneously that defendant's statement given July 12, 1982, which he argues was secured in contravention of his right to counsel, would be admissible to impeach his credibility if he chose to take the witness stand. Statements taken in violation of a defendant's constitutional rights "may nevertheless be used to impeach the defendant's credibility 'provided of course, that the trustworthiness of the evidence satisfies legal standards'" (*People v Washington,* 51 NY2d 214, 220, quoting *Harris v New York,* 401 US 222, 224). Here, neither the voluntariness of the statement given (*see, People v Maerling,* 64 NY2d 134), nor the trustworthiness of those reporting it is challenged; indeed, the statement was tape recorded. Furthermore, defendant's claim that the predetermined admissibility of his July 12, 1982 statement prohibited him from testifying at trial and requires a reversal is devoid of merit.

Defendant's other points, that effective assistance of counsel was denied and the prosecutor's closing comments were inflammatory in character, are not borne out by the record. Moreover, the latter argument has not been preserved for review since defendant failed to object to those remarks at trial (*People v Jones,* 99 AD2d 559, 560).

Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.