OPINION OF THE COURT
 

 Levine, J.
 

 Defendant was convicted after a jury trial of murder in the second degree (Penal Law § 125.25 [1]). The evidence established that defendant killed his long-time friend, Larry Amorose, with a machete. With the help of his girlfriend, defendant decapitated and dismembered Amorose’s body, put the body parts in garbage bags and discarded the bags in the ocean off Coney Island.
 

 The trial court rejected defendant’s request for a charge on extreme emotional disturbance (Penal Law § 125.25 [1] [a]) on the ground that the evidence was insufficient to justify submission of that affirmative defense to the jury. The Appellate Division affirmed the judgment of conviction (266 AD2d 564), and a Judge of this Court granted defendant leave to appeal. We now reverse.
 

 The Legislature has recognized that some intentional homicides may result from “an understandable human response deserving of mercy”
 
 (People v Casassa,
 
 49 NY2d 668, 680-681,
 
 cert denied
 
 449 US 842). Thus, the fact “that [a] homi
 
 *319
 
 cide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree” (Penal Law § 125.20 [2]). Mitigation is not limited to circumstances associated with the traditional “heat of passion” doctrine, but may be considered with respect to a broad range of situations where the trier of fact believes that such leniency should be afforded an emotionally disturbed defendant
 
 (see, People v Casassa, supra,
 
 at 679, 681).
 

 Hence, Penal Law § 125.25 (1) (a) provides that it is an affirmative defense to the crime of murder in the second degree that “[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be.” The determination whether a defendant is entitled to a charge on extreme emotional disturbance requires the trial court to assess whether sufficient evidence was presented “for the jury to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied”
 
 (People v Moye,
 
 66 NY2d 887, 889 [citations omitted];
 
 see also, People v White,
 
 79 NY2d 900, 902-903).
 

 The extreme emotional disturbance defense requires proof of both subjective and objective elements. The subjective element focuses on the defendant’s state of mind at the time of the crime and requires sufficient evidence that the defendant’s conduct was actually influenced by an extreme emotional disturbance
 
 (see, People v White, supra,
 
 at 903 [citations omitted]). This element is generally associated with a loss of self-control
 
 (see, id.,
 
 at 904;
 
 People v Walker,
 
 64 NY2d 741, 743).
 

 The objective element requires proof of a reasonable explanation or excuse for the emotional disturbance
 
 (see, People v White, supra,
 
 at 903;
 
 People v Casassa, supra,
 
 49 NY2d, at 679). Whether such a reasonable explanation or excuse exists must be determined by viewing the subjective mental condition of the defendant and the external circumstances as the defendant perceived them to be at the time, “however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for [the] emotional disturbance was reasonable”
 
 (People v Casassa, supra,
 
 at 679).
 

 People v Moye
 
 (66 NY2d 887,
 
 supra)
 
 provides an apt illustration of proof warranting the submission to the jury of the
 
 *320
 
 extreme emotional disturbance defense. The defendant in that case admitted, in statements to the police and District Attorney’s Office, that he decapitated and eviscerated a woman who teased and ridiculed him for his inability to perform sexual intercourse with her. Addressing the subjective element of the extreme emotional disturbance defense, we held that the defendant’s “savage acts of mutilating and decapitating his victim, coupled with his statements to the police and District Attorney that ‘something snapped’ inside him when she mocked and taunted him, that he went ‘bananas’ and he needed help, were evidence of a loss of self-control associated with the defense”
 
 (id.,
 
 at 890 [citation omitted]). As for the objective element, we held that “there was sufficient evidence for submission to the jury — which a rational jury might have accepted or rejected — of an explanation or excuse for defendant’s emotional state, in his recounting of the victim’s continued ridicule and taunting about his impotence”
 
 (id.,
 
 at 890 [footnote omitted]).
 

 In our view, the present case is analytically indistinguishable from
 
 Moye.
 
 Thus, viewing the evidence in the light most favorable to the defendant, as we must in considering whether the extreme emotional disturbance defense should have been charged to the jury
 
 (see, People v White, supra,
 
 79 NY2d, at 903), we conclude that defendant presented sufficient evidence with respect to both elements of the defense of extreme emotional disturbance so as to be entitled to the charge.
 

 Defendant confessed to the murder. His handwritten and videotaped statements to the police and District Attorney’s Office were introduced into evidence by the People. Defendant explained that he was in love with his live-in girlfriend, Monique Lloyd, and that Amorose started talking to her. Lloyd had been unfaithful to defendant with Amorose in the past. Indeed, she once left defendant for Amorose. When Lloyd went to another room, Amorose began taunting defendant by expressing in crude terms that he could still have sex with Lloyd at anytime and that Lloyd would leave defendant for him merely at his beck and call.
 

 Like the statements in
 
 Moye,
 
 defendant’s confessions explained that he completely lost control over his actions in response to Amoroso’s taunts. Defendant related that he started hitting Amorose and that “it was like [he] was looking at a movie [and] didn’t have any control” at the time. He admitted that he just “couldn’t stop” his attack on Amorose. He stated that he started crying and vomiting after he killed Amorose with the machete. He then related how he cut his victim to pieces.
 

 
 *321
 
 Additional evidence relevant to both elements of the defense was introduced in the form of psychiatric testimony. Based upon diagnostic analysis and review of pertinent records, defendant’s psychiatric expert opined that defendant was acting under “extreme stress” at the time of the incident and that he satisfied the criteria equated with “the legal terminology” of extreme emotional disturbance. The expert also explained that defendant’s comment — that he felt as if he were looking at a movie when he lost control over his actions — described a psychological phenomenon known as derealization, which often occurs “in extreme stress situations.” The expert further testified that defendant suffered from post-traumatic stress disorder as a result of previous traumatic incidents involving extreme violence, including defendant’s presence as an eyewitness to a murder. The expert relied upon this diagnosis, and other psychological factors that shaped how defendant perceived the world and events leading up to the slaying of Amorose, to explain why, in his opinion, a reasonable explanation existed for defendant’s disturbed state of mind.
 

 Based upon the foregoing evidence, a rational jury could conclude that defendant exhibited the severe loss of self-control normally associated with the subjective element of the extreme emotional disturbance defense (see,
 
 People v Moye, supra,
 
 66 NY2d, at 890). A rational jury could also determine that defendant satisfied the objective element of the defense. The jury could reasonably infer that he was provoked to rage over the emotionally charged subject of his lover’s past and potentially future infidelity with Amorose.
 

 Relying upon other portions of defendant’s statements and expert testimony, the People argue that defendant did not suffer from any extreme emotional disturbance but acted solely out of anger and jealousy and then in self-defense. However, this merely presented conflicts in the evidence that raised issues of fact for the jury to resolve in determining whether to accept or reject the affirmative defense of extreme emotional disturbance.
 

 Where, as here, the defendant’s request for submission of the extreme emotional disturbance defense to the jury should have been granted, the trial court’s failure to charge the defense requires a reversal and new trial
 
 (see, People v Moye, supra,
 
 66 NY2d, at 890;
 
 see also, People v Torre,
 
 42 NY2d 1036, 1037;
 
 People v Steele,
 
 26 NY2d 526, 528-529). In light of our determination, we need not consider defendant’s remaining arguments.
 

 
 *322
 
 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.