McCarthy, J.
*1251 Counsel never gave notice of intent. Defendant testified at trial, although he barely addressed the circumstances surrounding the time of the murder itself. At the charge conference after the proof was closed, defense counsel requested an EED defense charge. County Court denied the request on two grounds — lack of notice and lack of proof to support the charge. The jury convicted defendant of the sole count, murder in the second degree, and the court sentenced him to 25 years to life in prison. Defendant appeals.
Counsel erred in failing to give notice of intent to offer psychiatric evidence. CPL 250.10 provides that a court permit late service of a notice of intent, in the interest of justice and for good cause shown, up until the close of the evidence (see CPL 250.10 [2]). The prosecutor provided the citation for a recent Court of Appeals case addressing the situation, and County Court urged counsel to study the case and quoted an applicable sentence, all prior to the close of the evidence. As made clear in Diaz, the term “psychiatric evidence” as used in CPL 250.10 is “broadly construed to encompass ‘any’ mental health evidence offered by a defendant, including] lay testimony,” even testimony from the defendant himself or herself (People v Diaz, 15 NY3d at 47). Despite this recent, binding, applicable case law that was pointed out to counsel multiple times during the trial, when he still could have provided late notice of his intent to offer defendant’s testimony in support of an EED defense, counsel did not seek to provide notice but still sought an EED defense charge after the proof was closed.
Prior to trial, defendant was examined by a mental health expert. Because defendant chose not to call this expert as a wit *1252 ness or introduce the expert report as evidence at trial, defendant was only required to disclose the expert’s report to the People if he filed a notice of intent to offer psychiatric evidence (see CPL 240.30 [1] [a]). While counsel may have wanted to avoid disclosing that report to the People (see CPL 240.30 [1] [a]), and opening defendant up to an examination by an expert selected by the People (see CPL 250.10 [3]), counsel’s method of doing so effectively prevented defendant from obtaining an EED defense charge even though EED was the only viable defense. In fact, that was the defense that counsel specifically pursued from his opening statement through the close of proof, yet his actions undermined his ability to have the jury consider it. A single error can constitute ineffective assistance if a defendant demonstrates “that the error was ‘so egregious and prejudicial’ as to deprive defendant of a fair trial” (People v Cummings, 16 NY3d 784, 785 [2011], cert denied 565 US —, 132 S Ct 203 [2011], quoting People v Turner, 5 NY3d 476, 480 [2005]). Counsel erred by either lacking familiarity with or understanding of the Diaz case, or failing to follow its guidance without any legitimate explanation. The question then becomes whether this error rendered his assistance ineffective.
The People contend that counsel’s failure to provide notice of intent does not require reversal because County Court also denied the request for an EED defense charge on an alternate basis, namely the lack of proof regarding EED. To support the defense, defendant had to show that at the time of the homicide he acted under the influence of EED and that there was a reasonable explanation for that disturbance (see People v Roche, 98 NY2d 70, 75-76 [2002]; see also People v Smith, 1 NY3d 610, 612 [2004]). EED is a “mental infirmity not rising to the level of insanity . . . , typically manifested by a loss of self-control” (People v Roche, 98 NY2d at 75; see People v Harris, 95 NY2d 316, 319 [2000]). Action influenced by EED need not be spontaneous, but may be a significant mental trauma that “has affected a defendant’s mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore” (People v Patterson, 39 NY2d 288, 303 [1976], affd 432 US 197 [1977]; see People v Casassa, 49 NY2d 668, 676 [1980], cert denied 449 US 842 [1980]). To be entitled to an EED defense jury charge, defendant had to submit “evidence sufficient for a jury to find, by a preponderance of the evidence, that the elements of this affirmative defense were established” (People v Walker, 64 NY2d 741, 743 [1984]). When considering if the EED defense should have been charged to the jury, we view the evidence in a light most favorable to defendant (see People v Harris, 95 NY2d at 320).
*1253 Defendant and another witness testified that on the night before he attacked the victim, defendant learned that she was telling others that she no longer had romantic feelings for him. Defendant was also upset because the victim was pregnant, likely by another man, and she had apparently not responded appropriately when his apartment was burglarized and his belongings were stolen. Although defendant declined to testify regarding the circumstances of the killing itself on direct examination, he did testify that after “I did what I did ... I called my uncle in Atlanta. I was still in shock.” He then said that he fell asleep and “I thought it was a dream when I woke up,” “I really don’t really understand how it happened and why it happened. I just — it just happened.” When he was asked on cross-examination whether he wrapped the lamp cord around the victim’s neck, defendant replied, “I blanked out. I don’t remember none of that.”[2]
This testimony was insufficient to support a jury finding that defendant established, by a preponderance of the evidence, the elements of the EED defense (see People v Walker, 64 NY2d at 743). Defendant did not provide any proof of his mental state at the time of the commission of the crime, stating — despite having taken the witness stand — that he did not want to talk about what happened in regard to the killing itself. Counsel asked questions to elicit defendant’s mental state at the time of the commission of the crime, but defendant did not respond and instead avoided that topic. While his testimony could be used to support a lack of intent because he said he could not remember, there was ample other evidence of his intent to kill the victim. His testimony may have shown that he acted on jealousy or anger when he killed her. Although those emotions may sometimes serve as a reasonable explanation for the presence of *1254 EED, they are not alone indicative of any mental infirmity and “are not equivalent to the loss of self-control generally associated with that defense” (id. at 743; see People v Ross, 34 AD3d 1124, 1126 [2006], lv denied 8 NY3d 884 [2007]; People v Knights, 109 AD2d 910, 911 [1985]; compare People v Harris, 95 NY2d at 320 [the defendant confessed that he “ ‘couldn’t stop’ his attack” and “ ‘it was like [he] was looking at a movie [and] didn’t have any control’ at the time”]; People v Moye, 66 NY2d 887, 890 [1985] [the defendant stated that “ ‘something snapped’ inside him,” he “went ‘bananas’ ” and “needed help,” indicating loss of self-control]).
Even viewing the evidence in a light most favorable to defendant, as we must when considering if the EED defense should have been charged to the jury (see People v Harris, 95 NY2d at 320), the record does not support the defense and charging it “would have invited the jury to impermissibly speculate as to the defendant’s state of mind at the time of the [homicide]” (People v Walker, 64 NY2d at 743; see People v Roche, 98 NY2d at 76; People v Setless, 289 AD2d 708, 709-710 [2001], lv denied 98 NY2d 640 [2002]). Defendant’s own conduct in refusing to answer questions and to testify regarding the occurrence of the homicide itself prevented the jury from determining his state of mind during the commission of the crime.[3] As County Court’s alternative ground was a proper basis for denying the charge, and the evidentiary problems that were the basis of that ground were beyond counsel’s control, counsel’s error in failing to give notice was irrelevant; defendant would not have received the EED defense charge even had notice been given. While our state standard for meaningful representation does not require a full showing of prejudice such as a reasonable probability that the outcome would have been different without counsel’s errors, reversal will be warranted where the inadequacy of counsel deprives a defendant of a fair trial (see People v Caban, 5 NY3d 143, 155-156 [2005]). Here, defendant’s testimony and behavior on the witness stand resulted in the denial of the EED defense charge, independent of any errors by counsel. Accordingly, counsel’s failure to give notice, while error, did not deprive de *1255 fendant of a fair trial and does not entitle defendant to a new trial.
Counsel also asked open-ended questions of a police investigator during cross-examination that elicited testimony that defendant “sold drugs to support himself and [the victim].” Based on some later questioning, it appears that counsel may have had some purpose for allowing testimony concerning defendant’s prior drug dealing, as defendant had discussed that topic with the police. This testimony may have been part of counsel’s strategy in pursuing the EED defense by showing — as noted by counsel in his opening statement — that defendant was self-destructing, implying that his mental state must have been affected for him to tell the police that he had committed not only this murder, but other murders — none of which could be verified by the police — and different crimes such as selling drugs. As this questioning may have been part of a legitimate strategy, we cannot find counsel ineffective for allowing that testimony into evidence (see id. at 154; People v Henry, 95 NY2d 563, 566 [2000]; People v Wiltshire, 96 AD3d 1227, 1229 [2012]).
Counsel did err in failing to object to testimony by the victim’s sister that defendant “forced [the victim] to have sex with him” at times. As this prior crime evidence was hearsay, prejudicial and unrelated to any issue in the case, it was inadmissible (see People v Chapman, 54 AD3d 507, 511 [2008]). This error alone is insufficient to constitute ineffective assistance (see People v Wiltshire, 96 AD3d at 1229). Counsel effectively represented defendant by making pretrial motions, representing defendant at a suppression hearing addressing his statements, having defendant examined by a mental health professional, cross-examining the witnesses at trial and urging the jury to find that defendant did not have the proper mens rea to commit intentional murder — despite defendant’s behavior during trial of leaving the witness stand, both during direct examination and cross-examination, before questioning was completed, and his rants several times telling the jury that he knew he was going to be convicted and sentenced to 25 years to life. Viewing counsel’s actions in their totality, even when considering this questioning error along with counsel’s failure to provide notice of intent to offer psychiatric evidence, counsel’s errors did not rise to such an egregious level as to deprive defendant of meaningful representation (see People v Cummings, 16 NY3d at 785).
Considering defendant’s brutal murder of a woman that he knew was pregnant, his prior criminal history and his lack of remorse, we do not find the sentence harsh or excessive.
Mercure, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.

. In the written statement that defendant provided to police, he mentioned calling his uncle and sleeping after the call, but did not mention being in shock, thinking it was a dream or not understanding how it happened. In the written statement, defendant said that he thought about killing the victim about seven hours before the murder and that he had thought about killing her “for a couple of days.” He said that he and the victim went to bed, but defendant “sat up waiting” and decided to wait until 4:00 a.m. to kill her because people would be asleep then. While stabbing her with the scissors, he “was purposefully] trying to kill her and would not let her up.” After choking her with the lamp cord, “[o]nce [he] felt she was dead [he] picked her up by [the] neck with the cord and kept choking her for three minutes ... to make sure she was dead.” He ended his statement by saying that he killed the victim and her baby, he felt no regret and no remorse, and “I don’t give a f. . . who cares what I did because only God can judge me.” The statement reflected the intentional nature of his crime without a hint of defendant having acted under the influence of EED.

. Defendant appears to contend that counsel was ineffective for raising the EED defense during opening statements and stating that County Court would charge the jury with that defense, without counsel being able to prove the defense. Setting aside the notice issue, counsel stated during a colloquy that he anticipated that defendant would “testify to a momentary lapse of control, momentary loss of control.” Thus, counsel believed that he would elicit evidence sufficient to support an EED defense, and the lack of proof was due to defendant’s failure or refusal to provide testimony as to his own mental state at the time the crime was committed.