[976 NE2d 217, 951 NYS2d 691]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DONYELL J. MCKENZIE, Appellant.

Argued May 31, 2012; decided June 26, 2012

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*James Eckert* of counsel), for appellant. The trial court committed reversible error when it refused to charge the jury on the lesser-included offense of manslaughter in the first degree. The trial evidence demonstrated that, upon being laughed at by his paramour and told by her that she had cheated on him, Mr. McKenzie "lost control," "just snapped" and then stabbed her nearly 50 times, an act which the prosecution admitted supported the inference that he had lost control. (*People v Patterson*, 39 NY2d 288; *People v Casassa*, 49 NY2d 668; *People v Moye*, 66 NY2d 887; *People v Roche*, 98 NY2d 70; *People v Petty*, 7 NY3d 277; *People v Ortiz*, 76 NY2d 446; *People v Fardan*, 82 NY2d 638; *People v Harris*, 95 NY2d 316; *People v Diaz*, 15 NY3d 40; *People v Walker*, 64 NY2d 741.)

*Sandra Doorley, District Attorney*, Rochester (*Leslie E. Swift* of counsel), for respondent. I. The Fourth Department's affirmance should stand because the denial of defendant's extreme emotional disturbance jury charge request was not reversible error given his failure to meet his burden of proof to secure the same. (*People v Smith*, 1 NY3d 610; *People v Roche*, 98 NY2d 70; *People v Walker*, 64 NY2d 741; *People v Harris*, 95 NY2d 316; *People v Casassa*, 49 NY2d 668; *People v Fardan*, 82 NY2d 638; *People v Patterson*, 39 NY2d 288, 432 US 197; *People v White*, 79 NY2d 900; *People v Butts*, 72 NY2d 746.) II. CPL 250.10 (2) should apply to disallow an extreme emotional disturbance jury charge in defendant McKenzie's case. (*People v*

*Payne,* 3 NY3d 266; *People v Almonor,* 93 NY2d 571; *People v Berk,* 88 NY2d 257; *People v Segal,* 54 NY2d 58; *People v Diaz,* 15 NY3d 40; *People v Moye,* 66 NY2d 887; *People v Gonzalez,* 26 Misc 3d 687; *People v Hill,* 4 NY3d 876.)

## OPINION OF THE COURT

Chief Judge Lippman.

Defendant was convicted of second degree murder upon evidence that he killed Tyffany Porter, his fiancée and paramour of some two years, by inflicting numerous knife wounds. Although he had sought to interpose the affirmative defense that his homicidal acts had been committed under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse (*see* Penal Law § 125.25 [1] [a]), and upon that theory to afford the jury the option of returning a verdict of manslaughter in the first degree instead of murder (*see id.*), the trial court refused to charge the defense. While acknowledging that the evidence of the homicide's manner of commission was indicative of a loss of self control on defendant's part, the court deemed the charge unwarranted absent proof that defendant suffered from an underlying "mental infirmity." Thereafter, in affirming defendant's conviction, the Appellate Division found the denial of the charge proper, concluding that defendant's "conduct before, during and after the offense [was] inconsistent with the loss of self-control associated with the defense" (81 AD3d 1375 [2011] [internal quotation marks and citation omitted]). A Judge of this Court granted defendant's application for permission to appeal (17 NY3d 819 [2011]), and we now reverse.

Defendant did not testify or otherwise present evidence. His request for an extreme emotional disturbance charge was based entirely on proof elicited during the People's case. That proof was that there had been a heated argument between defendant and Ms. Porter secondary to Ms. Porter's refusal to engage in sexual relations with defendant and her closely ensuing disclosure that she, in retaliation for what she believed had been similar conduct on defendant's part, had been unfaithful to defendant with one of his friends. During the argument, defendant retrieved a knife from the kitchen of the couple's apartment, returned to the bedroom, and, as the mutually abusive exchange escalated from words to blows, stabbed Ms. Porter some 47 times, killing her. There was further evidence that, from the scene of the homicide, defendant drove to the home of

a friend, Latonya Whitfield, to whom he eventually admitted the stabbing, claiming that he "just snapped." Whitfield testified that, at the time, defendant appeared "spaced out" and "out of it." A short time later, defendant called 911 to surrender. In explaining what had happened, he told the dispatcher that he "just lost it" and had "blacked out."

Defendant made no attempt to conceal what he had done. He left the homicide weapon in open view and when he was taken into custody still had blood on his clothing and shoes. On the way to the police station he admitted that he had "f . . . d up." He confessed to the stabbing in station house interviews, at one point apparently overcome with emotion, and executed a written statement in which he admitted that he had used the kitchen knife against Ms. Porter. He explained that he was scared, panicked and lost control; Ms. Porter, he said, enraged by suspicions of infidelity, had previously pulled knives on him, slept with a razor under her pillow, and had caused him to lose sight in his left eye when, during a prior altercation, she shattered a window of a car in which he was sitting.

In judging whether to accede to a defendant's request to charge an affirmative defense, a court is bound to view the evidence in the light most favorable to the defendant (*People v Butts*, 72 NY2d 746, 750 [1988]), an exercise understood to be incompatible with weighing the evidence to resolve competing inferences (*see id.*). The charge must be given if there is evidence reasonably supportive of the defense, even if there is other evidence which, if credited, would negate it (*id.*). We have repeatedly recognized that these general principles are applicable where the defense sought to be charged is that of extreme emotional disturbance (*see People v Moye*, 66 NY2d 887, 889 [1985]; *accord People v Harris*, 95 NY2d 316, 320 [2000]; *People v White*, 79 NY2d 900, 903 [1992]). If, then, the evidence would have permitted defendant's jury reasonably to conclude by a preponderance (Penal Law § 25.00 [2]) that, at the time of the homicide, he was affected by an extreme emotional disturbance, and that that disturbance was supported by a reasonable explanation or excuse rooted in the situation as he perceived it (*see People v Casassa*, 49 NY2d 668, 678-680 [1980], *cert denied* 449 US 842 [1980]),* the charge should have been given. Although, it is true, as the Appellate Division evidently found,

---

* As is here pertinent, Penal Law § 125.25 (1) (a) provides that it is an affirmative defense to murder that "[t]he defendant acted under the influence of

*(n. cont'd)*

that the evidence in the aggregate would have permitted the jury to reject defendant's claim of emotional disturbance and loss of control, it was instead the viability of the alternative, contrary inference—that defendant in fact experienced an emotional break which caused him to "snap"—that should have guided the trial court's determination of the charge request.

As the trial court recognized, the sheer number and redundancy of the knife wounds inflicted on Ms. Porter was indicative of defendant's loss of control. The court denied the charge instead upon the ground that there was no proof that defendant had a "mental infirmity that r[ose] short of a mental disease or defect." But the purpose of this quoted language, as it has been used in our decisions to describe the predicate for an extreme emotional disturbance defense (*see People v Patterson*, 39 NY2d 288, 302 [1976], *affd* 432 US 197 [1977]; *see also People v Roche*, 98 NY2d 70, 75 [2002]), patently was not to tether the defense to proof of an underlying psychiatric disorder; "mental infirmity" in the presently relevant context refers more broadly to any reasonably explicable emotional disturbance so extreme as to result in and become manifest as a profound loss of self-control. We have in fact recognized that the subjective element of the extreme emotional disturbance defense may be inferred simply from circumstances indicative of a loss of control and, concomitantly, that it may be established without psychiatric evidence (*People v Roche*, 98 NY2d at 76; *Moye*, 66 NY2d 887, 890 [1985]). In *Moye*, for example, extreme emotional disturbance was deemed inferable simply from evidence of an uncommonly savage assault together with the victim's initial sexual taunting and the assailant's closely following admissions, in the course of which he stated that he "snapped" and "went bananas" (66 NY2d at 890 [internal quotation marks omitted]). It is true that in *Roche* we said that a brutal assault would not itself suffice to demonstrate extreme emotional disturbance (98 NY2d at 77-78). Here, however, as in *Moye*, the evidentiary predicate for the defense was augmented by inculpatory admissions to third parties, including the police, in which defendant stated that he had "snapped" after the victim rejected his overtures and disclosed her infidelity. There were also reports of defendant's appearance and demeanor consistent with his having been affectively

---

extreme emotional disturbance for which there was a reasonable explanation or excuse, *the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be*" (emphasis supplied).

disturbed in the assault's near aftermath. Under the circumstances of record, then, the first prong of the defense—that defendant at the time of the assault was subjectively overtaken by an extreme emotional disturbance—was sufficiently made out to support defendant's charge request.

Whether the evidence also was adequate to support the additionally requisite inference that the situation, as defendant perceived it, reasonably occasioned the emotional response he claims to have experienced, might well be understood to pose a closer question. On the one hand, taunting over sexual matters and disclosures of sexual infidelity in the context of established intimate relationships are historically the most commonly accepted mitigating circumstances for otherwise murderous behavior. On the other hand, this was not a situation in which defendant was ridiculed about impotence or some other potentially humiliating sexual deficit (*cf. Moye*, 66 NY2d at 888-889) or in which he reacted to the sight of his paramour in flagrante (*see e.g. Patterson*, 39 NY2d at 291); here, the claimed provocation was perhaps somewhat less obviously volatile. Inasmuch, however, as the relevant inquiry was whether the evidence, viewed most favorably to defendant, presented a triable question, we believe that the issue of the reasonableness of defendant's explanation should have been put to the jury. Although it did not require it, the evidence plausibly allowed the conclusion that Ms. Porter's sexual rejection of defendant, together with her closely following abrupt and apparently vengeful disclosure of her infidelity with his friend, precipitated not just ordinary anger or even rage, but an onrush of emotion leaving defendant bereft of self-control. Whether that explanation ultimately was worthy of credit was for the jury to decide based on its appreciation of the entire body of evidence.

A claim of extreme emotional disturbance must, of course, be credibly supported if the defense upon which it rests is to be submitted to the jury (*see People v White*, 79 NY2d 900, 902-903 [1992], citing *Moye*, 66 NY2d at 890 n), but that requirement was not intended to cast the trial court in the fact-finding role properly reserved to the jury (*see id.*). The court's contemplated gate-keeper function is under our cases limited to excluding claims that are patently insufficient, either by reason of the absence of evidence from which the claimed disturbance might be reliably inferred (*see e.g. Roche*, 98 NY2d at 77) or for lack of proof of any but a speculative relation between the alleged disturbance and a plausible triggering circumstance (*see e.g. id.* at

78; *People v Walker*, 64 NY2d 741, 743 [1984]) or between the disturbance and the defendant's homicidal acts (*see People v White*, 79 NY2d at 902-904). This case involved none of these objectively discernible deficiencies. Nor was it one in which the assertion of the defense was an obvious afterthought to avoid a murder conviction, and in that light "incredible." Here, as noted, the defense was significantly—and a jury might have found authentically—rooted in inculpatory statements closely following the homicide and in third-party observations of defendant's conduct, appearance and demeanor during that same period.

"The purpose [of the extreme emotional disturbance defense] was explicitly to give full scope to what amounts to a plea in mitigation based upon a mental or emotional trauma of significant dimensions" (Wechsler, *Codification of Criminal Law in the United States: The Model Penal Code*, 68 Colum L Rev 1425, 1446 [1968]; *see Casassa*, 49 NY2d at 679). The consonant claim made by this defendant was not that his admitted homicidal conduct was excusable, only that it should not be penalized as murder because he acted under the influence of an understandable, traumatically induced emotional disturbance. The question thus framed by defendant's charge request was not whether defendant should be held criminally responsible for killing Ms. Porter, but whether instead of a conviction for murder, there should be one for first degree manslaughter based on what was for all intents and purposes, a plea in mitigation. Given the evidence in the case, we perceive little danger that a jury in choosing between the highly punitive options occasioned by the proposed defense would have been reduced to speculation. That being so, it was the jury, and not the court, that should in the end have determined the defense's merit.

The People's argument that defendant's failure to afford them CPL 250.10 (2) notice should be preclusive of an extreme emotional disturbance defense, raised for the first time at the Appellate Division, is not preserved for our review (*see People v Jones*, 85 NY2d 998, 999 [1995]).

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.