[5 NE3d 1269, 983 NYS2d 208]

The People of the State of New York, Respondent, v Victor Gonzalez, Appellant.

Argued January 9, 2014; decided February 13, 2014

**POINTS OF COUNSEL**

*Davis Polk & Wardwell LLP*, New York City (*Mathew S. Miller* of counsel), and *The Bronx Defenders*, Bronx (*V. Marika Meis* of counsel), for appellant. I. The trial court misapplied CPL 250.10 by construing appellant's request for an extreme emotional disturbance jury charge based solely on evidence introduced by the People as "[e]vidence . . . to be offered by the defendant" and statutory "notice," entitling the People to reopen their case and present psychiatric evidence to rebut their own evidence. (*People*

v McKenzie, 19 NY3d 463; *People v Moye*, 66 NY2d 887; *People v Harris*, 95 NY2d 316; *People v Almonor*, 93 NY2d 571; *People v Berk*, 88 NY2d 257; *People v Diaz*, 15 NY3d 40; *People v Wenzel*, 133 AD2d 716; *People v Davis*, 136 Misc 2d 1076; *People v Khan*, 68 NY2d 921; *People v Johnson*, 225 AD2d 464.) II. The trial court violated appellant's Fifth Amendment rights by conditioning allowance of the extreme emotional disturbance jury charge on the introduction of appellant's Fifth-Amendment-protected statements against him. (*Estelle v Smith*, 451 US 454; *Buchanan v Kentucky*, 483 US 402; *People v Diaz*, 3 Misc 3d 686; *People v Kruglik*, 256 AD2d 592; *New Jersey v Portash*, 440 US 450; *Brooks v Tennessee*, 406 US 605; *Battie v Estelle*, 655 F2d 692; *Brown v Butler*, 876 F2d 427; *United States v Trapnell*, 495 F2d 22; *People v Bagby*, 65 NY2d 410.)

*Robert T. Johnson, District Attorney*, Bronx (*Peter D. Coddington* of counsel), for respondent. Justice Cirigliano properly conditioned appellant's right to assert extreme emotional disturbance upon the prosecution's right to rebut that defense. (*People v Roche*, 98 NY2d 70; *People v Smith*, 1 NY3d 610; *People v McKenzie*, 19 NY3d 463; *People v Diaz*, 15 NY3d 40; *People v Moye*, 66 NY2d 887; *People v Wenzel*, 133 AD2d 716; *People v Almonor*, 93 NY2d 571; *People v Hall*, 18 NY3d 122; *People v Jenkins*, 44 AD3d 1, 11 NY3d 282; *People v Garguilio*, 57 AD3d 797.)

### OPINION OF THE COURT

ABDUS-SALAAM, J.

Under CPL 250.10, a defendant must provide notice of intent to offer evidence in connection with the affirmative defense of extreme emotional disturbance (EED). We have held that a defendant seeking to admit expert or lay testimony related to an EED defense must comply with the notice requirement before that defense may be submitted to the jury (*see People v Diaz*, 15 NY3d 40, 46-47 [2010]; *People v Berk*, 88 NY2d 257, 263 [1996]). The question presented here is whether CPL 250.10 applies where the defendant offers no evidence at trial but requests an EED jury charge based solely upon evidence presented by the People. We conclude that statutory notice is not required under these circumstances.

### I.

On May 9, 2006, defendant bludgeoned his boss, Wilfredo Pinto Lebron, Jr., to death with a hammer and dismembered his

body. Police arrested defendant after Lebron's girlfriend discovered his severed torso in a garbage can outside her apartment building. Defendant subsequently confessed to killing Lebron and took police to the locations in the Hunts Point area of the Bronx where he had discarded the remaining body parts.

The following day, defendant signed a written statement prepared by a police detective that described how the crime had transpired. According to the statement, Lebron had first attacked defendant on the night of the killing by punching defendant in the face and breaking a wooden bookshelf across his back. A neighbor broke up the altercation, but when Lebron tried to instigate another fight, defendant went to his room to retrieve a hammer that, by his account, he needed to defend himself against Lebron. When Lebron confronted defendant again, he struck Lebron in the head with the hammer. Lebron tried to run into a bedroom, but defendant followed and hit Lebron's head several more times with the hammer until Lebron stopped moving. Defendant then dragged Lebron's body to the bathroom and dismembered it using knives from the kitchen. He placed the body parts into separate garbage bags and, after cleaning up the apartment, deposited the bags into different garbage cans in Hunts Point.

After executing the statement, defendant gave a videotaped confession to a Bronx County Assistant District Attorney. Defendant's account of the events was essentially the same as what he described in the written statement. However, defendant stated several times during the confession that he had "lost [his] mind" during the fight with Lebron and was "out of [his] mind" while he dismembered Lebron's body. Defendant further claimed that Lebron, who had been defendant's boss at his construction job, had physically and mentally abused him every day for weeks prior to the killing. Defendant was subsequently charged with murder in the second degree (Penal Law § 125.25), manslaughter in the first degree (*id.* § 125.20), removal of a body (Administrative Code of City of NY § 17-201), and dissection of the body of a human being (Public Health Law § 4210-a).

Before trial, defendant's attorney served on the People and filed with the court a notice of intent to proffer psychiatric evidence in connection with an EED defense (*see* CPL 250.10 [2]; *see id.* at [1] [b]). Defendant submitted to an examination by the People's psychiatrist, Dr. Goldsmith (*see id.* at [3]), and was also examined by his own psychiatrist. The psychiatric reports were later exchanged between the parties (*see id.* at [4]).

Subsequent to the examinations but prior to trial, defense counsel informed the prosecutor that defendant would not be presenting any psychiatric evidence at trial and that counsel would withdraw the CPL 250.10 notice. Defense counsel never formally withdrew the notice, however, and never informed the trial court of his intention to do so. When the prosecutor later told defense counsel that he would seek to introduce the video confession into evidence, defense counsel represented that defendant planned to assert a justification defense.

At trial, the People introduced defendant's written statement and the videotaped confession into evidence during their case-in-chief. The People also presented testimony from several witnesses, including the police detectives who interviewed defendant and a medical examiner who determined that Lebron's death was caused by a combination of 10 hammer blows to the head and two stab wounds to the heart.[1] The defense rested without presenting a case or cross-examining any of the People's witnesses regarding defendant's mental state.

At the charge conference conducted prior to summations, defense counsel requested that the jury be instructed on EED. The trial court agreed that the evidence presented by the People, in particular the videotaped confession, established the elements of an EED defense and defendant was therefore entitled to a jury instruction. The prosecutor opposed the request, stating that he had been led to believe that defendant's CPL 250.10 notice had been withdrawn and that defendant would rely on a justification defense rather than an EED defense. The prosecutor asserted that, now that defendant sought an EED charge, the People had the right to rebut that charge with testimony by Goldsmith, who had opined, based on his examination of defendant while the CPL 250.10 notice was still in effect, that defendant had killed Lebron out of anger but had not lost control of his actions. Defense counsel countered that the People were not permitted to rebut their own evidence, that CPL 250.10 does not apply where a defendant has offered no psychiatric evidence, and that the introduction of Goldsmith's testimony, to the extent that it relied on statements defendant had made during the psychiatric examination, would violate his Fifth Amendment privilege against self-incrimination.

The trial court ruled that it would submit an EED charge to the jury on the condition that, out of fairness, the People be

---

1. Defendant never confessed to stabbing Lebron while he was still alive, only to dissecting his dead body.

given the opportunity to call Goldsmith to rebut the EED defense. Defense counsel, in response to the court's ruling, withdrew his request for the charge, and the prosecutor subsequently declined to call Goldsmith, stating that he had no reason to do so if defendant was no longer requesting an EED charge. The jury later convicted defendant of second-degree murder.

Defendant moved to set aside the verdict, arguing, as relevant here, that the trial court erred by failing to give the EED charge when the People's evidence supported that charge, and by ruling that defendant was only entitled to the charge if the People were permitted to present Goldsmith's testimony. Supreme Court denied the motion, holding that defendant's request for an EED charge served, essentially, as CPL 250.10 notice that defendant intended to offer his videotaped statements in support of an EED defense, and thus, the People were entitled to call Goldsmith to rebut that defense (*see* 26 Misc 3d 687, 695 [Sup Ct, Bronx County 2009]).

The Appellate Division affirmed (91 AD3d 453 [1st Dept 2012]). The court agreed with the trial court that "defendant's request for an EED charge [w]as the equivalent of a 'notice of intent to proffer psychiatric evidence' under CPL 250.10" (91 AD3d at 454). The court explained that "[w]hen defendant requested the . . . charge based on his statements to the police, defendant 'offered' that evidence 'in connection with' the EED defense, notwithstanding the fact that defendant did not present a case or cross-examine the People's witnesses concerning his mental state" (*id.*). Noting that we had previously construed CPL 250.10 "as applicable to '*any* mental health evidence to be offered by the defendant in connection with' a defense of extreme emotional disturbance," the court determined that "[t]his broad statutory mandate encompasses, in this case, the request for an EED charge based on the videotape that was in evidence" (*id.* at 455, quoting *People v Berk*, 88 NY2d 257, 265 [1996]). A Judge of this Court granted defendant leave to appeal (20 NY3d 1099 [2013]), and we now reverse.

## II.

"The affirmative defense of extreme emotional disturbance serves to reduce the degree of criminal culpability for acts that would otherwise constitute murder" (*People v Diaz*, 15 NY3d 40, 44-45 [2010]; *see* Penal Law § 125.25 [1] [a]). If the defendant proves by a preponderance of the evidence (*see* Penal Law

§ 25.00 [2]) that the homicide was committed while the defendant was "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse," the jury may find the defendant guilty of first-degree manslaughter rather than second-degree murder (*id.* § 125.25 [1] [a]; *see id.* § 125.20 [2]; *Diaz, supra*).

A defendant is entitled to a jury charge on EED where the evidence, viewed in the light most favorable to the defendant, is sufficient for the jury "to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied" (*People v Moye*, 66 NY2d 887, 889 [1985]; *accord People v Harris*, 95 NY2d 316, 320 [2000]; *People v White*, 79 NY2d 900, 903 [1992]). Accordingly, the trial court must grant the defendant's request for an EED charge if the jury could reasonably conclude from the evidence that, at the time of the homicide, the defendant "was affected by an extreme emotional disturbance, and that [the] disturbance was supported by a reasonable explanation or excuse rooted in the situation as he perceived it" (*People v McKenzie*, 19 NY3d 463, 466 [2012], citing *People v Casassa*, 49 NY2d 668, 678-680 [1980], *cert denied* 449 US 842 [1980] [citation and footnote omitted]). This is true even if the "[d]efendant did not testify or otherwise present evidence" and the "request for an extreme emotional disturbance charge [i]s based entirely on proof elicited during the People's case" (*McKenzie, supra* at 465).

Under CPL 250.10, a defendant must "serve[ ] upon the [P]eople and file[ ] with the court a written notice of his intention to present psychiatric evidence" in connection with the defenses of lack of criminal responsibility by reason of mental disease or defect (i.e., insanity), EED, and any other defense (CPL 250.10 [2]; *see id.* at [1] [a], [b], [c]). Once notice has been provided, the court may compel the defendant to submit to an examination by a psychiatrist or licensed psychologist retained by the People (CPL 250.10 [3]). We have held that, upon the trial court's discretion, the People may use the examination to rebut the "psychiatric evidence" the defendant presents (*see Diaz*, 15 NY3d at 47). Failure to comply with the notice provision will preclude the defendant not only from admitting psychiatric evidence, but from "raising any defense predicated on a mental infirmity, including extreme emotional disturbance" (*Diaz*, 15 NY3d at 45; *see People v Almonor*, 93 NY2d 571, 581 [1999] ["The statute is not cast so as to allow a defense or affirmative defense to be introduced when notice is given; it is cast in terms that bar the defense *unless* notice is given"]).

■ Here, defendant effectively withdrew the CPL 250.10 notice he submitted prior to trial and sought an EED charge based on the People's proof. The parties do not dispute that defendant's statements in the videotaped confession were sufficient to support the charge, as the trial court concluded,[2] or that defendant was entitled to an EED charge even though his request for the charge was based solely on evidence admitted by the People (*see McKenzie, supra*). The issue is whether CPL 250.10 applied where defendant presented no evidence of EED, and instead relied on the People's direct case to support the submission of his EED defense to the jury. The courts below treated defendant's request for an EED charge as the equivalent of CPL 250.10 notice because, in their view, defendant was essentially giving notice that he intended to "offer" his videotaped statements "in connection with" an EED defense (*see* CPL 250.10 [1] [b]). This conclusion was error.

As originally enacted, CPL 250.10 required that "a defendant serve advance notice of intent to *rely upon* the insanity defense" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 250.10 at 109-110 [emphasis added]; *see Berk*, 88 NY2d at 262). In 1980, the legislature amended the notice provision to require written notice where the defendant "inten[ds] to present psychiatric evidence," rather than simply "rely upon" an insanity defense (*see* L 1980, ch 548, § 7), so the amended statute would apply when a defendant sought to admit evidence to support that defense (*see* Executive Mem at 2, Bill Jacket, L 1980, ch 548 ["defendant must give notice of intent to *give evidence* of mental disease or defect" (emphasis added)]).[3] When the legislature amended the statute again in 1982 to address EED, it did not return to the requirement that a defendant provide notice when relying upon a mental infirmity defense; it simply added EED to the types of psychiatric evidence that, when "offered by the defendant," triggers the notice requirement (*see* L 1982, ch 558, § 9; *Berk, supra*).

---

**2.** The prosecutor argued during the charge conference that defendant was not entitled to an EED charge because defendant's statements in the videotaped confession did not show that defendant had lost self-control when he killed Lebron. The People have abandoned this argument on appeal.

**3.** With the 1980 amendment, the legislature also added the provision authorizing the People to have a defendant examined by a mental health professional; thus, the title of the statute was changed from "Notice of defense of mental disease or defect" to the name it retains today: *"Notice of intent to proffer psychiatric evidence*; examination of defendant upon application of prosecutor" (L 1980, ch 548, § 7; CPL 250.10 [emphasis added]).

In its present form, CPL 250.10 requires notice when a defendant *"inten[ds] to present psychiatric evidence"* (*id.* at [2] [emphasis added]), which the statute broadly defines as "[e]vidence of mental disease or defect to be *offered by the defendant in connection with* the affirmative defense of," as relevant to this appeal, "extreme emotional disturbance" (*id.* at [1] [b] [emphasis added]). The legislature did not specify what qualifies as mental health evidence "offered by the defendant"; however, to "offer evidence," as that legal phrase is traditionally understood, means to put forth evidence and "demand its admission" (Black's Law Dictionary 1081 [6th ed 1990]; *see* Black's Law Dictionary [9th ed 2009], proffer ["To offer or tender (something, esp. evidence) for immediate acceptance"]). Additionally, the frequently used meaning of "present" is "to bring or introduce into the presence of someone" (Merriam-Webster's Collegiate Dictionary 982 [11th ed 2003]). The legislature's use of these "active" terms suggests that it intended the notice requirement to apply where the defendant affirmatively seeks to admit psychiatric evidence in support of an EED defense.

This interpretation comports with our broad construction of the notice provision. We have reiterated that CPL 250.10 "applies to *any* mental health evidence to be offered by the defendant in connection with" a mental infirmity defense (*Berk*, 88 NY2d at 265), and as such, " 'any' mental health evidence offered by a defendant" requires notice to be admissible (*Diaz*, 15 NY3d at 47). This includes "expert or lay testimony, whether by the defendant or other persons," that "seeks to establish a mental infirmity" defense (*id.*). Although construing the statute "broadly," we have recognized that it applies only to mental health evidence "offered by a defendant" (*id.*), meaning that the defendant must be the proponent of the evidence for notice to be required (*Berk*, *supra* at 265 [notice required where defendant "sought to introduce expert testimony by a forensic psychologist"]; *see Diaz*, *supra* at 43 [notice required where "defendant testified on his own behalf and presented the testimony of a psychiatrist who had examined him"]; *see also Almonor*, 93 NY2d at 577 [holding that the trial court properly precluded the defendant from presenting psychiatric evidence "related to lack of assaultive intent" due to defective notice]).

Here, defendant did not "offer" or "present" evidence in connection with his EED defense. Specifically, defendant never put forth and demanded the admission of any evidence related to EED (*see Diaz*, *supra*; *Berk*, *supra*), nor did he cross-examine

any of the People's witnesses about EED or his mental health (*cf. People v Wenzel*, 133 AD2d 716, 716-717 [2d Dept 1987], *lv denied* 70 NY2d 939 [1987] [holding that defendant "endeavored to prove his (EED) defense by cross-examination of the People's witnesses" and this was considered "proof of the defense" for the purposes of CPL 250.10 (5)]). Rather, defendant relied on evidence admitted by the People during their direct case to support his request for an EED charge. Requesting an EED charge based on the People's proof is not commensurate with "offer-[ing]" evidence "in connection with" an EED defense for the purposes of triggering the notice requirement. CPL 250.10 requires notice whenever a defendant intends to admit evidence establishing a mental infirmity defense (*Diaz, supra* at 47; *Berk, supra* at 265); a defendant merely relying on the People's proof simply does not come within the ambit of the statute. Accordingly, defendant's request for an EED charge should not have been construed as CPL 250.10 notice, as the courts below held, and defendant was not required to provide notice in order to receive the charge.

This result does not offend the important policy considerations underlying the notice requirement. "The statutory notice provision is grounded on principles of fairness and is intended 'to prevent disadvantage to the prosecution as a result of surprise' " occasioned by the defendant's sudden interposition of psychiatric evidence and an accompanying mental infirmity defense (*Diaz, supra* at 46, quoting *Berk*, 88 NY2d at 263). Although the statute states that psychiatric evidence is "inadmissible" without proper notice (CPL 250.10 [2]), we have construed the notice provision more broadly, holding that a defendant will be barred from even raising an EED defense unless he or she provides notice (*see Diaz, supra* at 45; *Almonor*, 93 NY2d at 581). This rule further protects the People from the prejudice caused by "surprise" mental health evidence (*see Diaz, supra* at 46-47). When defendant seeks an EED charged based on the People's proof, however, the concern for "preventing unfair surprise" is reduced (*Diaz, supra* at 46). There, the defendant is not attempting to introduce new mental health evidence, but is merely relying on evidence the People chose to admit.

Here, the videotaped confession contained statements that could support an EED charge, whereas defendant's written statement did not. Deciding which evidence to include in the case-in-chief is often a matter of strategy, and in this case, the People made the strategic decision to admit the videotape into

evidence. Of course, defense counsel employed a strategy as well by withdrawing the initial CPL 250.10 notice and waiting until the close of proof to request the EED charge based on the videotaped statements. Although the charge request came as a surprise to the People, particularly in light of the prosecutor's prior discussions with defense counsel, it was still based on the People's own evidence, and therefore was not so inherently disadvantageous as to justify expanding the notice requirement.

The People nevertheless maintain that we should interpret CPL 250.10 broadly to require that defendants give notice whenever they intend to rely on the prosecution's evidence to support an EED defense. Such a rule would be no different from requiring notice every time a defendant intends simply to *rely upon* an EED defense. CPL 250.10 does not require notice in these circumstances, and if the legislature had intended otherwise, it would not have removed comparable language from the statute, or it would have reinstated that language in the 1982 amendment that addressed EED.

Additionally, the People's rule would be impracticable in application. CPL 250.10 (2) requires that notice be given "before trial" and "not more than thirty days after entry of the plea of not guilty to the indictment." Under the People's view, defendants could only comply with the notice requirement if they revealed "before trial" that they intended to rely on the People's evidence to support an EED defense. Although the aim of CPL 250.10 is to "prevent[ ] unfair surprise" by permitting the People to adequately prepare for a mental infirmity defense (*Diaz*, 15 NY3d at 47), the legislature did not necessarily intend that a defendant be forced to disclose, ahead of trial, that his or her trial strategy depends entirely on evidence to be offered by the People. A defendant may not know at this early juncture what evidence the People intend to admit. As a result, most defendants would likely file late notice, which the statute allows at the trial court's discretion (*see* CPL 250.10 [2]), but the legislature did not intend to be the normal procedure.

### III.

 Having determined that CPL 250.10 notice is not required where a defendant relies on the People's evidence to support an EED charge, we now consider whether the trial court abused its discretion here by, in exchange for issuing the EED charge,

permitting the People to introduce Goldsmith's testimony.[4] Because no notice was required, there was no statutory basis for allowing the People to use the psychiatric examination against defendant. Thus, the trial court abused its discretion by conditioning the EED charge on the People's presentation of Goldsmith's testimony when it should have simply submitted that charge to the jury.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur.

Order reversed and a new trial ordered.

---

4. The People argue that the trial court did not err by conditioning the EED charge on the People's presentation of Goldsmith's testimony because that testimony would not necessarily have relied on defendant's statements. But the People never made this claim before the trial court; rather, the prosecutor made clear that the People intended to call Goldsmith to testify that he had determined, based on his examination of defendant, that defendant did not suffer from EED at the time of the homicide.