# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**232**

**KA 12-02273**

PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

ALI-MOHAMAD MOHAMUD, DEFENDANT-APPELLANT.

---

KATHRYN FRIEDMAN, BUFFALO, FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (DONNA A. MILLING OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered November 15, 2012. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) in connection with the beating death of his 10-year-old stepson. We note at the outset that, although the People contended at trial that defendant failed to comply with CPL 250.10 (2) by providing notice of his intent to request a charge on the affirmative defense of extreme emotional disturbance (*see* § 125.25 [1] [a]), it is now established that defendant was not required to do so because he based his defense solely on the People's evidence (*see People v Gonzalez*, ___ NY3d ___, ___ [Feb. 13, 2014]). We nevertheless reject defendant's contention that Supreme Court erred in refusing to instruct the jury on the affirmative defense of extreme emotional disturbance. Viewing the evidence in the light most favorable to defendant, we conclude that the evidence is not "reasonably supportive of the defense" (*People v McKenzie*, 19 NY3d 463, 466), which requires that, "at the time of the homicide, [defendant] was affected by an extreme emotional disturbance, and . . . that disturbance was supported by a reasonable explanation or excuse rooted in the situation as he perceived it" (*id.*). The evidence established that defendant bound and gagged the child before striking him in excess of 60 times with a rolling pin. Although the Court of Appeals has written that "the sheer number and redundancy of the . . . wounds inflicted on [the victim] was indicative of defendant's loss of control" (*id.* at 467), the Court has "never held that a jury may infer the presence of an extreme emotional disturbance based solely on proof

that the crime was especially violent or brutal.  This is so because violence and brutality are not necessarily indicative of a loss of self-control or similar mental infirmity, nor is brutality generally more deserving of mercy.  Where [the Court has] referenced the nature or severity of the wounds, the probative value of such evidence has been linked to other compelling evidence of extreme emotional disturbance" (*People v Roche*, 98 NY2d 70, 77-78; *see e.g. McKenzie*, 19 NY3d at 465-466; *People v Moye*, 66 NY2d 887, 890).

Here, the evidence established that the victim had refused to do his homework and had run from the house, in an apparent attempt to go to his sister's house.  A neighbor assisted defendant in bringing the child home, and she described defendant as "upset" and "tired," but "not angry."  We note that the neighbor also testified that defendant assured her that he would not do anything to the child and the child said "he always says that."  Medical and physical evidence supports the conclusion that defendant put the child's head in the toilet.  The evidence also establishes that, following the murder, defendant disposed of his bloody clothes, washed the rolling pin he used to beat the child and returned it to the kitchen drawer, cared for the two younger children in the home, waited several hours for his wife to return from work and lied to her about the child's whereabouts, and contacted his supervisor with instructions on how to dispose of his personal property.  Defendant told his supervisor that he "killed [his] kid" but did not say why, did not express remorse, and was described by his supervisor as calm and "melancholy."  In his statement to the police, defendant said that the child lied to him every day and that he "always [told] his [step]son to go live with his father in Africa."  He related the events of the murder, but did not indicate that he "snapped" or lost control (*cf. Gonzalez*, ___ NY3d at ___; *McKenzie*, 19 NY3d at 466; *Moye*, 66 NY2d at 890).  We conclude that "proof of the objective element [of the defense] is lacking" (*Roche*, 98 NY2d at 78), inasmuch as " 'defendant's behavior immediately before and after the killing was inconsistent with the loss of control associated with the affirmative defense' " (*People v McGrady*, 45 AD3d 1395, 1395, *lv denied* 10 NY3d 813; *cf. Gonzalez*, ___ NY3d at ___).

Entered:  March 21, 2014                    Frances E. Cafarell
                                            Clerk of the Court