# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**7**

**KA 13-01456**

PRESENT: SCUDDER, P.J., CENTRA, LINDLEY, SCONIERS, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                        MEMORANDUM AND ORDER

RYAN P. BRAHNEY, DEFENDANT-APPELLANT.
(APPEAL NO. 2.)

---

DAVID P. ELKOVITCH, AUBURN, FOR DEFENDANT-APPELLANT.

RYAN P. BRAHNEY, DEFENDANT-APPELLANT PRO SE.

JON E. BUDELMANN, DISTRICT ATTORNEY, AUBURN (CHRISTOPHER T. VALDINA OF COUNSEL), FOR RESPONDENT.

---

Appeal from a resentence of the Cayuga County Court (Thomas G. Leone, J.), rendered December 3, 2012. Defendant was resentenced as a second felony offender.

It is hereby ORDERED that the resentence so appealed from is affirmed.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him following a bench trial of, inter alia, two counts each of murder in the second degree (Penal Law § 125.25 [1], [3] [intentional and felony murder]), burglary in the first degree (§ 140.30 [2], [3]), and criminal contempt in the first degree (§ 215.51 [b] [v], [vi]). In appeal No. 2, defendant appeals from a resentence based upon County Court's failure to sentence him as a second felony offender (*see generally* CPL 400.21 [4]). According to the evidence presented at trial, defendant unlawfully entered the home of his former girlfriend and their three-year-old son, while they were asleep, and stabbed his former girlfriend 38 times, causing her death.

Contrary to defendant's contention in appeal No. 1, the verdict of guilty of intentional murder is not against the weight of the evidence inasmuch as he failed to prove by a preponderance of the evidence that he "acted under the influence of extreme emotional distress for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in [his] situation under the circumstances as [he] believed them to be" (Penal Law § 125.25 [1] [a]; *see* § 25.00 [2]). The evidence established that defendant was very angry when he observed a man, who had recently been released from prison for a drug-related conviction, at the home of his former girlfriend earlier in the

evening.  Defendant returned to her home a few hours later, at which time he broke a window, entered the apartment, and dragged the victim downstairs and killed her.  Following his arrest, defendant made several statements justifying his behavior on the alleged ground that his former girlfriend had exposed his son to drugs and to "drug dealers."

Defendant presented the testimony of his expert psychologist who opined that defendant had an underlying and undiagnosed condition of bipolar disorder that was at the root of his inability to control his rage with respect to his perception that the victim was exposing his son to drug use.  Defendant's expert stated that defendant engaged in a "frenzied attack" and that he had a "spotty" memory regarding the attack.  The People presented the testimony of their expert psychiatrist who disagreed that defendant had bipolar disorder and opined that defendant displayed the classic traits of antisocial personality disorder.  The People's expert further testified that defendant "is a violent man," as evidenced by his criminal history of violent crimes, and he opined that defendant's concern for his son was reasonable, but that his actions in response to that concern were not. The People also presented evidence that defendant stated in a recorded jail telephone call approximately three months prior to the murder that he "was going to . . . murder her" and that he was going "take [his] jack knife and carve her . . . neck out."  Defendant did not mention that he was concerned about his son's welfare during that conversation.

It is well established that "a brutal assault would not itself suffice to demonstrate extreme emotional disturbance" (*People v McKenzie*, 19 NY3d 463, 467; *see People v Roche*, 98 NY2d 70, 77-78; *People v Mohamud*, 115 AD3d 1227, 1228-1229, *lv denied* 23 NY3d 965). Although the Legislature recognized that "some homicides are worthy of mitigation because they 'result from an understandable human response deserving of mercy' " (*Roche*, 98 NY2d at 75; *see People v Harris*, 95 NY2d 316, 318; *People v Casassa*, 49 NY2d 668, 680-681, *cert denied* 449 US 842), that is not the case here.

Defendant further contends in appeal No. 1 that the court failed to comply with CPL 710.60 inasmuch as the court granted his pretrial motion seeking a *Huntley* hearing but failed to conduct one.  We conclude that, by failing to object to the testimony of the arresting officer and the three witnesses who heard defendant make inculpatory statements during a standard suicide risk assessment during the booking process, defendant waived his right to a *Huntley* hearing with respect to those inculpatory statements (*see People v Wilson*, 90 AD3d 1155, 1155, *lv denied* 18 NY3d 963).  Although defense counsel objected to references in the prosecutor's opening statement to inculpatory statements made by defendant during recorded telephone calls with family members, those statements are not subject to a CPL 710.30 notice or a *Huntley* hearing inasmuch as they were not made to a "public servant" (CPL 710.30 [1]).  We conclude that defendant did not waive a *Huntley* hearing with respect to an inculpatory statement he made to an officer while in a holding cell because he objected to the

testimony at trial, and the objection was overruled following an off-the-record discussion.  We therefore conclude that the court erred in permitting the testimony without conducting a *Huntley* hearing, or stating on the record its determination of that part of defendant's motion seeking to suppress that statement (*see* CPL 710.60 [6]; *see generally People v Pallagi*, 91 AD3d 1266, 1267-1268).  We nevertheless conclude that the error is harmless.  We note that the record establishes that the statement was spontaneous and not " 'the product of an interrogation environment [or] the result of express questioning or its functional equivalent' " (*People v Sierra*, 85 AD3d 1659, 1660, *lv denied* 17 NY3d 905).  The evidence of defendant's guilt is overwhelming, and we conclude that there is no reasonable possibility that the error contributed to the conviction (*see generally People v Crimmins*, 36 NY2d 230, 237).

Defendant failed to preserve for our review his contention in appeal No. 2 that the court punished him for exercising his right to a trial by imposing a sentence more severe than that offered as part of the plea agreement (*see People v Brink*, 78 AD3d 1483, 1485, *lv denied* 16 NY3d 742, *reconsideration denied* 16 NY3d 828).  In any event, we conclude that defendant's contention is without merit.  "[T]here is no indication in the record before us that the sentencing court acted in a vindictive manner based on defendant's exercise of the right to a trial" (*id.*).

We reject defendant's further contention in appeal No. 2 that the court erred in directing that the sentences on the two counts of burglary in the first degree (Penal Law § 140.30 [2], [3]), which run concurrently with each other, shall run consecutively to the sentence imposed on the count of intentional murder (§ 125.25 [1]).  Defendant was convicted of burglary for unlawfully entering the victim's dwelling, with the aggravating factors of causing physical injury to the victim (§ 140.30 [2]), and using or threatening the immediate use of a dangerous instrument (§ 140.30 [3]), i.e., a butcher knife.  Defendant was charged with intentionally causing the victim's death by repeatedly stabbing her with a butcher knife.  It is well established that, in considering whether sentences must run concurrently under Penal Law § 70.25 (2), "the court must determine whether the [actus reus] element is, by definition, the same for both offenses (under the first prong of the statute), or if the [actus reus] for one offense is, by definition, a material element of the second offense (under the second prong)" (*People v Laureano*, 87 NY2d 640, 643).  "[W]hen the actus reus is a *single inseparable act* that violates more than one statute, single punishment must be imposed" (*People v Frazier*, 16 NY3d 36, 41 [internal quotation marks omitted]; *see People v Parks*, 95 NY2d 811, 814; *Laureano*, 87 NY2d at 645).  Although the actus reus elements of the burglary counts and the murder count overlap under the facts presented here, we nevertheless conclude that the People "establish[ed] the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts" (*Laureano*, 87 NY2d at 643).  The evidence established that, after defendant entered the apartment through a window that he smashed with a cinder block, he dragged the victim from her bed and

down the stairs to the living room, where he killed her.

We agree with our dissenting colleagues that the blood evidence located on the wall of the upstairs hallway and on the stairs establishes that defendant caused physical injury to the victim while she was still upstairs.  We note, however, that the photographic evidence demonstrates that there was a small blood smear on the wall of the upstairs hallway and drops of blood on the stairs.  By contrast, there was a tremendous amount of blood evidence in the downstairs of the dwelling where the victim died.  Furthermore, in a recorded telephone conversation to his mother, defendant stated that he "dragged [the victim] down the stairs and murdered her."  We conclude that the location and amount of blood evidence in the upstairs and in the downstairs of the dwelling confirm this statement. We therefore conclude that the People established that there were separate offenses, i.e., that the burglary was completed while the victim was still upstairs and that the murder occurred downstairs (*see People v Yong Yun Lee*, 92 NY2d 987, 988-989; *cf. People v Wright*, 19 NY3d 359, 366-367; *Laureano*, 87 NY2d at 645).  Thus, we conclude that the burglary and the murder offenses were "committed through separate acts, though they are part of a single transaction" (*People v Brown*, 80 NY2d 361, 364; *see People v Brathwaite*, 63 NY2d 839, 843; *People v Walker*, 117 AD3d 886, 887, *lv denied* 24 NY3d 965).  Also contrary to defendant's contention in appeal No. 2, the resentence is not unduly harsh and severe.

Defendant contends in his pro se supplemental brief with respect to appeal No. 1 that he was denied his right to due process because he did not give a knowing and voluntary consent to the stipulation that he caused the victim's death; he was denied his right to be present at sidebar conferences; he was not adequately advised of his right to testify; and he was denied effective assistance of counsel.  The record establishes that defendant's consent to the stipulation, which he signed and which was reviewed on the record, was knowing and voluntary.  The record also establishes that the sidebar conferences involved legal issues, and not " 'factual matters about which defendant might have peculiar knowledge that would be useful in advancing the defendant's or countering the People's position' " (*People v Spotford*, 85 NY2d 593, 596), and thus he did not have a right to be present.  Based upon remarks that defendant made during the prosecutor's summation, we conclude that he understood that he had the right to testify.  To the extent that defendant's contention in his pro se supplemental brief that he was denied effective assistance of counsel involves matters that appear on the record, we conclude that they are without merit and that defendant was afforded meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).  To the extent that his contentions involve matters outside the record, they must be raised by a motion pursuant to CPL article 440 (*see People v Washington*, 122 AD3d 1406, 1406).

All concur except CENTRA and LINDLEY, JJ., who dissent and vote to modify in accordance with the following memorandum:  We respectfully dissent inasmuch as we agree with defendant that County Court erred in directing that the sentences on the two counts of burglary in the

first degree (Penal Law § 140.30 [2], [3]), which run concurrently
with each other, shall run consecutively to the sentence imposed on
the count of intentional murder in the second degree (§ 125.25 [1]).
In our view, the consecutive sentences are illegal under the facts of
this case.

Pursuant to the two prongs set forth in Penal Law § 70.25 (2),
the court is required to impose concurrent sentences where a single
act constitutes two different offenses, or a single act constitutes
both one of the offenses charged and a material element of the other
(*see People v Parks*, 95 NY2d 811, 814-815; *People v Laureano*, 87 NY2d
640, 643).  Where separate acts are committed in the course of a
criminal transaction, or where one act does not constitute a material
element of a charged crime, the court may, in its discretion, impose
consecutive sentences (*see People v Bryant*, 92 NY2d 216, 230-231;
*People v Brown*, 80 NY2d 361, 363-364).  Whether a court has the
discretion to impose consecutive sentences thus depends on an analysis
of the statutory definition of the actus reus for each offense (*see
Laureano*, 87 NY2d at 643; *People v Day*, 73 NY2d 208, 211).

Here, the People failed to meet their burden of establishing that
the burglary and murder offenses were committed by separate and
distinct acts (*see Laureano*, 87 NY2d at 643; *see generally People v
Rosas*, 8 NY3d 493, 496).  Defendant was convicted of murdering the
victim by stabbing her repeatedly with a knife (*see* Penal Law § 125.25
[1]), and was convicted of burglarizing the victim's residence by
entering her dwelling with the intent to commit a crime therein and
causing physical injury to her (§ 140.30 [2]) and using or threatening
the immediate use of a knife (§ 140.30 [3]).  Contrary to the People's
contention, the burglary was not complete as soon as defendant entered
the victim's dwelling.  This would be true if defendant had been
charged and convicted of burglary in the second degree (*see* § 140.25
[2]; *People v Frazier*, 16 NY3d 36, 41).  Defendant, however, was
charged and convicted of two counts of burglary in the first degree,
which required the People to establish that, in addition to entering
and remaining unlawfully in a dwelling with the intent to commit a
crime therein, defendant caused physical injury to the victim and used
or threatened the immediate use of a dangerous instrument (§ 140.30
[2], [3]).

To show that the burglary and murder offenses were committed
through separate and distinct acts, the People must point to
"identifiable facts" in the record (*People v Ramirez*, 89 NY2d 444,
451; *see Laureano*, 87 NY2d at 644).  At trial, a recorded phone call
from defendant while he was in jail to his mother was played to the
court, in which defendant stated that he went inside the victim's
residence, dragged her down the stairs and murdered her.  A police
officer testified at trial that he found the victim with multiple stab
wounds in the downstairs of the residence.  There were signs of a
struggle in the master bedroom upstairs, and the victim had defensive
wounds.  There was blood "all over the place" downstairs, and there
was also some blood on the wall outside the master bedroom, on the
landing, on the wall next to the staircase, and on the stairs.  The
parties stipulated that the forensic analysis showed that it was the

victim's blood on the wall upstairs and on the staircase.  The Medical Examiner testified that the victim sustained 38 knife wounds.  He did not specify which of the wounds sustained by the victim was fatal, but rather testified that she died as a result of multiple stab wounds to the neck, chest, and back.

The majority concludes that the burglary was completed while the victim was still upstairs, and that she was not murdered until after she was dragged downstairs, and thus that the burglary and murder offenses were committed through separate acts.  In our view, we cannot determine that the burglary and murder offenses were separate and distinct because it is possible that the act of causing physical injury to the victim and using the knife was also the act that caused her death.  Considering the fact that the victim's blood was found upstairs and on the staircase, it is apparent that defendant stabbed the victim at least once while they were upstairs, which would complete the burglary offenses.  Unlike the majority, however, we conclude that the murder offense may also have occurred through that same act.  In other words, the wound or wounds that the victim sustained while upstairs may have ultimately caused her death.  Where, as here, the People failed to meet their burden, concurrent sentences are required (*see People v Amato*, 1 AD3d 713, 716-717, *lv denied* 1 NY3d 594).  We would therefore modify the resentence by directing that the sentences imposed for the counts of burglary in the first degree shall run concurrently with the sentence imposed for intentional murder in the second degree.

Entered:  March 20, 2015                    Frances E. Cafarell
                                            Clerk of the Court